2016 IL App (1st) 140555

THIRD DIVISION
June 22, 2016

No. 1-14-0555


| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 02 CR 22649 |
| | ) | |
| CORKY TERRY, | ) | Honorable |
| | ) | Charles P. Burns, |
| Defendant-Appellant. | ) | Judge Presiding. |


JUSTICE LAVIN delivered the judgment of the court, with opinion.
Presiding Justice Mason and Justice Pucinski concurred in the judgment and opinion.


**OPINION**

¶ 1    Defendant Corky Terry appeals from the circuit court's denial of leave to file a successive

petition for postconviction relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-

1 *et seq.* (West 2012)). On appeal, defendant contends that the court erred when it denied him

leave to file the instant petition because the petition met the requirements of the cause and

prejudice test. Specifically, defendant contends that he has established cause because the 2006

Report of the Special State's Attorney (the Egan Report), which corroborates his claims of

physical coercion by police officers was not available to him at the time of his "trial" or the filing

of his initial postconviction petition. Defendant contends that he has established prejudice

because our supreme court has held that the introduction of a physically coerced confession is never harmless error. We affirm.

¶ 2                                    BACKGROUND

¶ 3      Defendant's arrest and prosecution arose out of the fatal shooting of the victim, Reginald Washington, on August 6, 2002.

¶ 4      Defendant later filed a motion to suppress statements alleging, *inter alia,* that detectives Jerry Bogucki and Tony Noradin physically coerced him into making an inculpatory statement.

¶ 5      At the hearing on defendant's motion, Detective Raymond Schalk testified that he, along with detectives Bogucki and Noradin, interviewed defendant in the early morning hours of August 7, 2002. During an initial conversation, defendant stated that he did not shoot the victim, explained that he ran away when he heard gunshots and denied possessing a gun. Schalk responded that the arresting officers saw defendant with a gun and had recovered that gun. He further stated the gun would be tested for fingerprints and that defendant and defendant's clothing would be tested for gunshot residue. After hearing this, defendant admitted that he shot the victim. Schalk testified that defendant was not handcuffed during this conversation.

¶ 6      Later that day, Schalk was present, along with assistant State's Attorney (ASA) Molly Riordan, Bogucki and Noradin, when defendant again "told *** the story" of how he shot the victim. Schalk denied that anyone threatened defendant in order to obtain a statement. Neither he nor anyone in his presence kicked, punched or slapped defendant, grabbed defendant by the hair, or swung a phonebook at defendant. Defendant never complained about being mistreated. Schalk knew that Bogucki and Noradin did not interview defendant outside of his presence, because if they had, they were required to notify him as lead detective.

¶ 7     During cross-examination, Schalk denied that defendant was told that the police "had" defendant's fingerprints on the gun or that defendant told officers that he was under the influence of alcohol and marijuana. He also denied that either he or Bogucki and Noradin were ever alone with defendant.

¶ 8     ASA Molly Riordan testified that defendant chose to make a videotaped statement. Defendant's videotaped statement was then published to the court.[1]

¶ 9     In the statement, defendant stated that he was a member of the Maniac Latin Disciples gang and that the "Familia Stones" (Stones) was a rival gang. Defendant further stated that two days prior to the victim's death, he was threatened by certain Stones. On the day of the victim's death, defendant saw members of the Stones at a pool and "figured" that he had to scare them to make them leave him alone. He thought he could catch them "off guard" while they were barbecuing and planned to "just let off some shots" with a "Tech 9" handgun. When he was about 75 feet away from the group, he pulled the trigger four times and then ran away. As he was being chased by the police, he threw the gun away and hid under a car. Defendant had "no intention" to kill anyone and was "very sorry."

¶ 10    Defendant stated that no threats or promises were made in order to get him to make a statement and that he was treated well by the police. He denied being under the influence of drugs or alcohol. Defendant finally stated that he was sorry for what had happened and that "as a man" he was taking responsibility for his actions.

¶ 11    Riordan then testified that defendant was not handcuffed when she spoke to him. He did not appear coached or under the influence of alcohol or drugs, and he did not complain about any

_____

[1] The record does not contain the videotape of defendant's statement.

threats or mistreatment. During cross-examination she denied stating that defendant was not telling the truth or leaving him alone with Bogucki and Noradin.

¶ 12     Defendant testified that he was playing basketball when he heard gunshots so he ran away. He denied having a gun. Before playing basketball, he drank two "40 ouncers of Old English" and smoked 4 ½ grams of marijuana. After being taken into custody and transported to a police station, defendant stated that he did not have anything to do with the victim's death. The detectives left the room, and when they returned they had a photograph which showed defendant with members of the Maniac Latin Disciples. They stated that they "knew" who defendant was, he had been seen running across a street, and they had the gun with his fingerprints on it. When Schalk asked whether he was under any type of influence, defendant replied he was under the influence of alcohol and marijuana.

¶ 13     An ASA then entered the room and asked defendant if he wanted to tell her what had happened. Defendant repeated that he had been playing basketball when he heard gunshots so he ran away. The ASA stated that defendant was not telling the truth and left. Bogucki and Noradin then entered the room and told defendant that "this" was his last chance. Defendant said that he had given the detectives his side of the story and they left. When Bogucki and Noradin returned, Noradin grabbed defendant, who was handcuffed to a bench, by the hair and punched him in the ribs. Defendant was kicked and punched several times before the detectives left the room. When they returned, defendant was prone on a bench, covered in his own vomit and urine. The detectives then "did the same thing over," that is, grabbed his hair and punched him. Defendant was told that he could make an oral, handwritten or videotaped statement. When he again denied involvement, Bogucki swung a phonebook at him. Bogucki stated that defendant could either

admit that he did it or they could do "this" another way which would not involve a phonebook. Although defendant agreed to make a written statement, the detectives told him to make a videotaped statement and what to say.

¶ 14    During cross-examination, defendant testified that he was not telling the truth in the videotaped statement and that he was no longer a member of the Maniac Latin Disciples. However, he admitted that certain personal information such as his age and address was correct. He also admitted that he did not say anything about the police "feeding" him facts or kicking and slapping him on the videotape. Defendant acknowledged that on the videotape he stated that the statement was made voluntarily, that he was treated with respect by the police and that he was not under the influence of alcohol or drugs. Defendant reiterated that the detectives told him what to say. Although he made up the details surrounding his problems with the Stones and that he only wanted to scare people, the detectives told him to say that he had no intention to kill anyone.

¶ 15    In denying defendant's motion, the trial court characterized the issue as one of credibility, and stated that the videotaped statement "overwhelmingly" corroborated the testimony of the State's witnesses. The court also stated that defendant's testimony that he was mistreated was not corroborated by any other evidence and was actually contradicted by his statement. The court concluded that the statement was "more logical and believable and credible" than defendant's testimony which the court characterized as "absolutely incredible" in that defendant testified that some details of his statement were fed to him by detectives and that he made up the rest.

¶ 16    On April 5, 2004, defendant entered a negotiated plea of guilty to first degree murder and was sentenced to 35 years in prison. The factual basis for defendant's plea was that on August 6,

2002, the victim was fatally shot. The State further stated that the evidence would show that officers David Ruiz and David Pfest heard gunshots and proceeded to a park where witnesses stated that the shooter fled toward a certain street. As the officers approached that street, they observed defendant running while carrying a Tech 9 semiautomatic handgun. The officers chased and apprehended defendant. The evidence would also show that a sweatshirt recovered from defendant tested positive for gunshot residue and that the gun defendant dropped "came back positive" to a shell casing recovered at the crime scene. Finally, the evidence would show that defendant made an inculpatory videotaped statement. The parties stipulated to these facts.

¶ 17    When the court asked defendant if those were the facts that defendant was stipulating to, defendant answered in the affirmative. The trial court accepted defendant's plea and sentenced him to 35 years in prison.

¶ 18    Defendant then filed a motion to withdraw the plea alleging that his plea was not knowing and voluntary because his attorney used "mental coercion," including pressure from defendant's family to force him to accept a plea. The trial court denied the motion, and this judgment was affirmed on appeal. See *People v. Terry*, No. 1-05-0351 (2006) (unpublished order under Supreme Court Rule 23).

¶ 19    In 2006, defendant filed a *pro se* petition for postconviction relief alleging, *inter alia*, that he was denied the effective assistance of counsel because counsel failed to present certain documents regarding physical evidence during the hearing on the motion to quash arrest and suppress evidence and because counsel requested a plea without discussing it with defendant. The petition also alleged that defendant was denied the effective assistance of appellate counsel. The circuit court summarily dismissed the petition as frivolous and patently without merit. That

judgment was affirmed on appeal. See *People v. Terry*, No. 1-07-0861 (2008) (unpublished order under Supreme Court Rule 23).

¶ 20    In May 2013, defendant filed a *pro se* motion for leave to file a successive postconviction petition and the instant successive postconviction petition. The motion alleged that newly discovered evidence substantiated defendant's claim, first raised in his motion to suppress statements, that his confession was the result of physical coercion. The newly discovered evidence was the Egan Report, detailing misconduct by officers under the command of Jon Burge. Defendant received a copy of this report in March 2013.

¶ 21    Attached to the petition in support were, *inter alia,* defendant's affidavit, copies of the motions to suppress statements and quash arrest, and to suppress evidence, and documents titled "Report on the Failure of Special Prosecutors Edward J. Egan and Robert D. Boyle to Fairly Investigate Police Torture in Chicago," and "Victims of Area 5 Gang Crimes Unit Detectives,"

¶ 22    In an affidavit, defendant averred that in March 2013, he received copies of "Victims of Area 5 Gang Crimes Unit Detectives" and the 2007 "Report on the Failure of Special Prosecutors Edward J. Egan and Robert D. Boyle to Fairly Investigate Police Torture in Chicago."

¶ 23    In denying defendant leave to file the instant petition, the circuit court concluded that because the report defendant relied upon was filed in 2007, it could not be deemed newly discovered evidence. The court further found that although defendant filed a motion to quash arrest alleging coercion and abuse which was denied, he did not raise this claim in his direct appeal or his initial postconviction proceeding. The court finally found that the "OPS" investigation regarding systematic physical abuse focused on the period of 1973 to 1986 and

officers headquartered at Area 2, whereas defendant was arrested 16 years later and held at Area 5.

¶ 24                                ANALYSIS

¶ 25    Our supreme court has held that the scope of postconviction review is limited to constitutional matters which have not been, and could not have been, previously adjudicated. *People v. Evans*, 186 Ill. 2d 83, 91-92 (1999). The judgment of the reviewing court on a previous appeal is *res judicata* as to the issues actually decided, and any claim that could have been presented in the direct appeal is, if not raised, thereafter barred under the doctrine of waiver. *Id.*

¶ 26    The Act contemplates the filing of only one petition without leave of court (725 ILCS 5/122-1(f) (West 2012)), and "any claim not presented in an original or amended petition is waived." *People v. Sanders*, 2016 IL 118123, ¶ 24. A defendant must overcome " 'immense procedural default hurdles' " in order to file a successive postconviction petition. *People v. Crenshaw*, 2015 IL App (4th) 131035, ¶ 27 (quoting *People v. Tenner*, 206 Ill. 2d 381, 392 (2002)). These hurdles are only lowered in limited circumstances because successive postconviction proceedings " 'plague the finality of criminal litigation.' " *Id.* (quoting *Tenner*, 206 Ill. at 392).

¶ 27    Leave of court may be granted when a defendant demonstrates cause for failing to raise the claim in his earlier petition and prejudice resulting from that failure. 725 ILCS 5/122-1(f) (West 2012). "Cause" is established when the defendant shows that some objective factor impeded his ability to raise the claim in the original postconviction proceeding. *Tenner*, 206 Ill. 2d at 393. "Prejudice" is established when the defendant shows that the claimed error so infected

his trial that the resulting conviction violated due process. *Id*. A defendant must establish both cause and prejudice. *People v. Edwards*, 2012 IL 111711, ¶ 22.

¶ 28    In *People v. Smith*, 2014 IL 115946, ¶ 35, our supreme court reiterated that "the cause-and-prejudice test for a successive petition involves a higher standard than the first-stage frivolous or patently without merit standard." A circuit court should deny a defendant leave to file a successive postconviction petition when it is clear, based upon a review of the successive petition and the attached documentation, that the defendant's claims fail as a matter of law or when the petition and its supporting documents are insufficient to justify further proceedings. *Id*. We review *de novo* whether a defendant has fulfilled his burden to justify further proceedings on a successive postconviction petition. *Id*. ¶ 21.

¶ 29    On appeal, defendant contends that he has established cause because he did not obtain a copy of the Egan Report, which "substantiate[s]" his claims of physical coercion, until 2013. He further contends that he has established prejudice because our supreme court has held that a physically coerced confession is never harmless error.

¶ 30    The State responds that defendant has failed to properly support his postconviction claim because defendant failed to attach the Egan Report to his petition. The State argues the defendant is attempting to improperly amend his petition on appeal by asking this court to take judicial notice of the Egan Report. The State further argues that defendant has failed to meet the cause prong of the cause and prejudice test because the Egan Report was available to him at the time of his first postconviction petition. Defendant acknowledges that the document attached to his successive postconviction petition is not the Egan Report, however, he argues that he "correctly

cited the actual" Egan Report in his petition, that the report is publically available, and that he cannot be expected to have obtained a copy because he has been incarcerated since 2004.

¶ 31 Here, defendant failed to meet the pleading requirements of section 122-2 of the Act by failing to attach the document which he argues corroborates his claim to his successive petition. See 725 ILCS 5/122-2 (West 2012) (a defendant must attach documentation supporting his allegations to his petition or explain its absence); *People v. Wideman*, 2013 IL App (1st) 102273, ¶¶ 15-18 (discussing the pleading requirements of section 122-2 of the Act in a successive postconviction proceeding). However, even if we were to look beyond defendant's failure to attach to his petition the actual report upon which he bases his claim, defendant cannot satisfy the requirements of the cause and prejudice test. Defendant has failed to meet the cause prong because he has failed to identify an objective factor that impeded his efforts to raise the issue of his coerced statement in an earlier proceeding.

¶ 32 A postconviction proceeding is a collateral proceeding, rather than an appeal of the underlying judgment, and therefore it allows inquiry only into constitutional issues that were not, and could not have been, adjudicated on direct appeal. *People v. Pitsonbarger*, 205 Ill. 2d 444, 455-56 (2002). Additionally, any claim not presented in an initial postconviction petition or amended petition is waived. *Sanders*, 2016 IL 118123, ¶ 24.

¶ 33 The record reveals that although defendant testified at the hearing on his motion to suppress statements that he was punched, kicked and threatened by police officers until he agreed to make a videotaped statement, he did not challenge his inculpatory statement in either his direct appeal or in his initial postconviction proceeding and has therefore waived the claim. It is clear from the record before us that defendant's claim that he was physically coerced into

confessing could have been raised on direct appeal, *i.e.*, he could have challenged the trial court's denial of his motion to suppress statements, but he did not. See *Evans*, 186 Ill. 2d at 92 (any claim that could have been presented in the direct appeal is, if not raised, thereafter barred under the doctrine of waiver). Additionally, having known all of the facts necessary to raise this claim prior to the filing of his initial petition, defendant cannot establish cause for his failure to raise it in his initial petition. See *People v. Williams*, 394 Ill. App. 3d 236, 246 (2009) (the defendant could not show cause for his failure to include his claim in his initial postconviction petition when, although trial counsel did not provide him with documents to support his claims, he was aware of the claims and the supporting facts prior to his initial petition).

¶ 34    Defendant, however, contends that it was appellate counsel's decision to argue on direct appeal that defendant's motion to withdraw the plea should have been granted because defendant was "mentally coerced" by his attorney and family. He further argues that counsel's decision not to argue that the trial court erred when it denied defendant's motion to suppress does not mean that he gave up his claim that his confession was coerced or that he "acquiesced" to counsel's decision. He further argues that that without "any new evidence" he was barred by *res judicata* from arguing in his initial postconviction petition that his confession should have been suppressed because it was physically coerced. We disagree.

¶ 35    Although the Egan Report may, as defendant argues on appeal, serve to corroborate the general proposition that Chicago police officers used physical coercion to obtain statements from suspects, this additional evidence does not explain why defendant could not have raised this specific claim in his first postconviction proceeding. See *People v. Green*, 2012 IL App (4th) 101034, ¶ 40 (although the defendant uncovered additional evidence to support his claim, that

does not make that claim new). However, even if we take as true defendant's factual allegation that he did not come into possession of information related to the "widespread physical abuse of suspects" until 2013, defendant has not alleged sufficient facts to establish prejudice.

¶ 36    In order to satisfy the prejudice prong, a defendant must show that the claim not raised in his initial postconviction petition "so infected the entire trial that the resulting conviction or sentence violates due process." *Pitsonbarger*, 205 Ill. 2d at 464. In *People v. Wrice*, 2012 IL 111860, ¶ 84, our supreme court found that "use of a defendant's physically coerced confession as substantive evidence of his guilt is never harmless error" and concluded that the defendant's claim of physical coercion by officers at Area 2 headquarters "satisfied the prejudice prong of the cause-and-prejudice test."

¶ 37    Contrary to what defendant argues on appeal, however, the court did not hold that a defendant's bare allegation that his confession was physically coerced combined with reliance on the Egan Report establishes prejudice. Rather, the *Wrice* defendant established prejudice when he: (1) consistently claimed throughout the proceedings that he was tortured; (2) his torture claims were strikingly similar to those of other prisoners in Areas 2 and 3; (3) the officers named were also identified in other allegations of torture; and (4) the allegations were consistent with the findings of torture in the Egan Report. *Id*. ¶ 43. In other words, the holding of *Wrice* does not contradict the court's subsequent holding in *Smith* that a successive postconviction petition must adequately allege facts showing cause and prejudice, and leave to file a successive petition should be denied "where the successive petition with supporting documentation is insufficient to justify further proceedings." *Smith*, 2014 IL 115946, ¶¶ 34-35.

¶ 38    Although defendant is correct that the Egan Report has been relied upon by this court and our supreme court in other cases, defendant's petition fails to set forth with any specificity or certainty how the Egan Report would support his claim that he was physically coerced into making an inculpatory statement. We note that defendant concedes that detectives Bogucki and Noradin were not identified by name in the Egan Report and that he was held at a different police station. Additionally, defendant does not allege that he was tortured in the same manner as the individuals listed in the Egan Report, or that there was a pattern of abuse perpetuated either by Bogucki and Noradin or by other officers at the police station where he was held. Rather, defendant argues that the Egan Report corroborates his specific claim of abuse because it "confirms" that there was "widespread physical abuse of suspects" by police officers. However, generalized claims of abuse are not sufficient to support a claim of coercion; there must be a direct link to specific abuses in a particular defendant's case. *People v. Anderson*, 375 Ill. App. 3d 121, 137-38 (2007) (generalized claims of misconduct without any link to the defendant's case, such as evidence corroborating his allegations or some similarity between the type of misconduct he alleges and the evidence in other cases of abuse, are insufficient to support a claim of coercion). In other words, defendant cannot establish how he was prejudiced by the absence of the Egan Report in his first postconviction proceeding when he has failed to establish that the Egan Report is relevant to his specific claim of abuse.

¶ 39    We therefore reject defendant's speculative claim that because the Egan Report established that officers at Area 2 physically coerced suspects, defendant was subject to the same treatment years later at a different police station at the hands of different officers. Without evidence corroborating defendant's allegations of coercion, or "some similarity between the type

of misconduct alleged by defendant and that presented by" the cases in the Egan Report, the report fails to provide sufficient support for defendant's claim in this case. *Id*. Therefore, defendant has failed to establish how he was prejudiced by the Egan Report's absence from his initial postconviction proceeding (see *Pitsonbarger*, 205 Ill. 2d at 464), and the circuit court properly denied his motion for leave to file a successive postconviction petition (see *Smith*, 2014 IL 115946, ¶ 21).

¶ 40                                        CONCLUSION

¶ 41    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 42    Affirmed.