# Illinois Official Reports

## Appellate Court

---

### *People v. Evans*, 2017 IL App (1st) 143562

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANGELO EVANS, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-14-3562 |
| Filed | August 15, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 94-CR-10738; the Hon. Clayton J. Crane, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Christopher Kopacz, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Miles J. Keleher, and Margaret M. Smith, Assistant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE HYMAN delivered the judgment of the court, with opinion.<br>Justices Neville and Mason concurred in the judgment and opinion. |

**OPINION**

¶ 1    Angelo Evans, who was given a 90-year prison sentence as a juvenile, is receiving day-for-day credit against his sentence and may serve only 45 years of imprisonment. Evans wants to take advantage of recent United States Supreme Court opinions holding that a juvenile's youth and immaturity must be taken into account before he or she is sentenced to life imprisonment without the possibility of parole. He attempted to file a successive petition for postconviction relief, but the trial court denied him permission. We agree with the trial court. Evans is not serving either a life sentence or a "*de facto*" life sentence without the possibility of parole, and the recent eighth amendment decisions do not apply to him.

¶ 2                                    BACKGROUND

¶ 3    In 1996, then-17-year-old Angelo Evans was tried and convicted of attempted first degree murder and aggravated criminal sexual assault. The State alleged that Evans had sexually assaulted a family friend, K.R., then tried to kill K.R. by stabbing her multiple times and setting her head on fire. At sentencing, the trial court was presented with several reports detailing Evans's tragic family history and mental health issues, and Evans's counsel argued for leniency in sentencing. The trial court, however, found that no mitigating factors applied, describing Evans's conduct as "shockingly evil." The trial court sentenced Evans to an extended term of 60 years for the attempted murder and 30 years for the aggravated criminal sexual assault. The court also found that the sentences must run consecutively because Evans had inflicted severe bodily injury on K.R. while committing a Class X felony.

¶ 4    On direct appeal, Evans challenged his sentence as excessive, which this court rejected. See *People v. Evans*, No. 1-96-3368 (1997) (unpublished order under Supreme Court Rule 23). In 2002, Evans filed a postconviction petition alleging that his sentence violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and this court affirmed the dismissal of that petition in *People v. Evans*, No. 1-01-1806 (2002) (unpublished order under Supreme Court Rule 23). In 2009, Evans filed a petition for relief from judgment raising claims unrelated to his sentence; the petition was dismissed, and this court affirmed in *People v. Evans*, No. 1-09-2183 (2011) (summary order).

¶ 5    In 2014, Evans moved for leave to file a successive postconviction petition, arguing that his 90-year sentence violated the eighth amendment because he had been sentenced to life imprisonment for crimes committed while a juvenile. The trial court denied Evans leave to file the petition. Assuming that Evans had shown "cause" for his failure to raise the claim in his original postconviction petition, the trial court held that Evans could not show "prejudice" because the recent changes in juvenile sentencing law would not apply to his 90-year sentence.

¶ 6                              STANDARD OF REVIEW

¶ 7    We review the trial court's denial of leave to file a successive postconviction petition *de novo*. *People v. Edwards*, 2012 IL App (1st) 091651, ¶ 25.

¶ 8                                     ANALYSIS

¶ 9    Illinois prisoners are entitled to file only one postconviction petition without leave of the trial court. 725 ILCS 5/122-1(f) (West 2014). The trial court may grant leave to file a second or

"successive" postconviction petition only if the petitioner demonstrates "cause" for the failure to raise the claim in the initial petition and "prejudice" resulting from that failure. *Id.*; *People v. Smith*, 2014 IL 115946, ¶¶ 23-24.

¶ 10 Like the trial court (and the State in this appeal), we will assume that Evans has shown "cause" for his failure to raise the eighth amendment claim in his initial postconviction petition: at the time of that petition, the United States Supreme Court had not yet issued the opinions on which he bases his claim. The question remaining is whether Evans has shown "prejudice," specifically, that the claimed constitutional error "so infected his trial that the resulting conviction violated due process." *People v. Morgan*, 212 Ill. 2d 148, 154 (2004).

¶ 11 In recent years, the United States Supreme Court has grappled with the appropriateness of juvenile sentences, after determining that the eighth amendment prohibits certain harsh sentences for juveniles. It started with *Roper v. Simmons*, 543 U.S. 551 (2005), holding that the death penalty was unconstitutional for juvenile offenders. Then, in *Graham v. Florida*, 560 U.S. 48 (2010), the Court held that sentencing juveniles convicted of non-homicide offenses to life imprisonment without the possibility of parole was unconstitutional. *Miller v. Alabama*, 567 U.S. 460 (2012), followed, holding that life without parole is unconstitutional for juvenile offenders if the sentence is mandatory (while allowing such sentences if based on judicial discretion). *Miller*'s rule became retroactive in *Montgomery v. Louisiana*, 577 U.S. ___, ___, 136 S. Ct. 718, 736 (2016), which also instructed that states could remedy a *Miller* violation by allowing juvenile offenders with mandatory life sentences to become eligible for parole. *Id.* at ___, 136 S. Ct. at 736. So far, the Supreme Court has reserved these rulings for the most severe punishments: death or life imprisonment.

¶ 12 Our supreme court took up a slightly different question in *People v. Reyes*, 2016 IL 119271. Reyes, a juvenile, received a sentence based on mandatory minimums that was so long the supreme court held it "unsurvivable": a total of 97 years, of which Reyes would be required to serve 89 years before he could become eligible for release. *Id.* ¶¶ 2, 9. The State conceded that Reyes would not live long enough to become eligible for release. *Id.* ¶ 10. Because Reyes had received a "mandatory, *de facto* life-without-parole sentence," the supreme court vacated it under *Miller*, as the sentencing court had not been able to consider the mitigating factors of his youth, immaturity, and potential for rehabilitation. *Id.* ¶¶ 9, 10.

¶ 13 Perhaps inevitably, the next flood of cases to reach our appellate courts concerned what constitutes a "mandatory, *de facto* life-without-parole" sentence, as does Evans's appeal. That determination controls whether the *Miller* line of cases assists him. So far, neither the United States Supreme Court nor the Illinois Supreme Court has held that sentencing courts need to hear or consider the mitigating factors of youth if the sentence is less than death, mandatory life without parole, or mandatory "*de facto*" life without parole. See *People v. Buffer*, 2017 IL App (1st) 142931, ¶ 56 ("under the holding in *Reyes*, if we were to find that the petitioner's 50-year sentence constitutes a *de facto* life sentence, we would be compelled to conclude that such a sentence, without consideration of the factors unique to juveniles, is unconstitutional as applied to him under the eighth amendment").

¶ 14 We will first focus on the possibility of parole, rather than the length of the sentence as in *Reyes*. For *Reyes* (and most of the cases cited interpreting it), the defendant was required to serve the entire term of years, with no opportunity to demonstrate rehabilitation or for early release. Evans is luckier; he committed his crimes under different sentencing statutes and is eligible for day-for-day good conduct credit against his sentence. This sentencing scheme

means that he could be released after serving only 45 years of his sentence, at age 62. This alone takes Evans out of the *Miller* category, since he is not serving a sentence without the possibility of parole. (Indeed, allowing juveniles to become eligible for parole is precisely how the *Montgomery* Court recommended that states handle juvenile sentences after *Miller*.)

¶ 15 Evans acknowledges that he might not serve all 90 years but still argues that a 45-year sentence is *de facto* life because he is unlikely to survive it. Prison life is undoubtedly harsh. But Evans invites us into the weeds of actuarial tables, asking us to make a legal determination of his likely lifespan. We are in a poor position to make this prediction and decline to do so. As the court observed in *People v. Jackson*, 2016 IL App (1st) 143025, ¶ 57:

> "Is it simply a certain age upon release? If so, is it age 65, as defendant seems to argue for in his appellate brief, or 90? Should the age vary by ethnicity, race or gender? If we are going to consider more than age, what societal factors or health concerns should impact our assessment of a *de facto* life sentence[?] These are policy considerations that are better handled in a different forum."

It is one thing to say with some certainty, as the *Reyes* court did, that a defendant will not survive until release at age 105. It is quite another to overturn Evans's sentence based on assumptions and speculation that he will not survive to age 62.

¶ 16 Evans's potential 45-year sentence is not as long as other *de facto* life sentences. See *Reyes*, 2016 IL 119271 (97-year sentence); *People v. Morris*, 2017 IL App (1st) 141117, ¶ 30 (100-year sentence); *People v. Sanders*, 2016 IL App (1st) 121732-B, ¶¶ 25-27 (100-year sentence); *People v. Nieto*, 2016 IL App (1st) 121604, ¶ 42 (78-year sentence); *People v. Decatur*, 2015 IL App (1st) 130231, ¶ 18 (105-year sentence). The length of Evans's sentence compares favorably with cases not involving a *de facto* life sentence. See *Jackson*, 2016 IL App (1st) 143025, ¶ 58 (50-year sentence); *People v. Applewhite*, 2016 IL App (1st) 142330, ¶ 16 (45-year sentence, allowing release at age 62); *People v. Gipson*, 2015 IL App (1st) 122451, ¶¶ 65-67 (52-year sentence, allowing release at age 60); but see *Buffer*, 2017 IL App (1st) 142931 (50-year sentence equates to *de facto* life sentence); *People v. Ortiz*, 2016 IL App (1st) 133294, ¶ 24 (60-year sentence, allowing release at age 75, equates to *de facto* life sentence).

¶ 17 Evans then goes on to argue that even if he survives to be released in his mid-sixties, this sentence still runs afoul of the eighth amendment because he will "have little hope for a productive life." Evans is asking us to stretch the holdings of both the United States Supreme Court and the Illinois Supreme Court. Neither court declares it unconstitutional for a person to spend his most meaningful, productive years in prison after committing a truly horrific crime. And Evans already challenged the length of his sentence as excessive on direct appeal; we will not hear a similar argument in a successive postconviction appeal.

¶ 18 Since Evans is not serving a *de facto* life sentence, the new protections elucidated by *Miller* and its progeny do not apply to him. So the trial court correctly ruled that Evans had not shown "prejudice" to justify filing a successive postconviction petition.

¶ 19 Affirmed.