# Illinois Official Reports

## Appellate Court

---

### *People v. Johnson*, 2018 IL App (1st) 153266

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LLEWILLYN JOHNSON, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-15-3266 |
| Filed | April 18, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 01-CR-2208; the Hon. Thomas J. Hennelly, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Michael Gentithes, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, John E. Nowak, and Noah Montague, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE FITZGERALD SMITH delivered the judgment of the court, with opinion.<br>Justices Howse and Lavin concurred in the judgment and opinion. |

¶ 1 Following a 2004 bench trial, defendant Llewillyn Johnson was convicted of first degree murder and sentenced to 40 years' imprisonment. We affirmed on direct appeal. *People v. Johnson*, No. 1-04-1812 (2005) (unpublished order under Illinois Supreme Court Rule 23). We also affirmed the dismissal of his 2006 postconviction petition. *People v. Johnson*, 2015 IL App (1st) 132664-U. Defendant now appeals from a 2015 order denying him leave to file a successive postconviction petition. He contends that he showed the requisite cause and prejudice regarding his claim that his 40-year prison sentence for a crime he committed when he was 15 years old is improper. For the reasons stated below, we affirm.

¶ 2 The trial evidence was that, on October 15, 1998, defendant fatally shot his cousin, Kena Brown, in her car while robbing Brown of a few ounces of cocaine and while her infant daughter was in the car. Danielle Theus testified that, on the morning of October 15, she heard Brown take a telephone call from a male caller, after which Brown told Theus that she was going to meet her cousin Tari Brisco to deliver an ounce of drugs and then would meet Theus. Brown's car containing her body and her daughter was found that afternoon in the 4100 block of West Kinzie Street in Chicago. James Parson testified that defendant told him in late October or early November 1998 that he and Brisco robbed defendant's cousin Kena of nine ounces of cocaine, after Brisco arranged to buy cocaine from her, and defendant told Parson that he "shot the bitch" in the head after telling her to look him in the eye. Parson testified that defendant took him in November 1998 to the 4100 block of Kinzie Street, "the spot where he had took his cousin," and told Parson that he had intended to shoot Brown's daughter but decided to leave her in the car rather than take the time to shoot her and risk being caught. Brisco was present on both occasions, and Parson described him as "just smiling" during defendant's accounts. After Parson was arrested for a drug offense in 2000, he told police about defendant's admission to killing Brown and took police to the Kinzie Street location. In December 2000, Parson met defendant, with police recording the meeting, and defendant bragged about shooting Brown after Brisco declined to shoot her and after she begged for her life. The recording was shown at trial.

¶ 3 The presentence investigation report (PSI) indicated that defendant was born in July 1983. Defendant admitted in the PSI to a juvenile adjudication for possession of a controlled substance, for which he received probation that he completed successfully. However, the PSI also stated that no juvenile adjudication was found under defendant's name. Defendant was raised by his mother and grandmother, and had a close relationship with them, but rarely saw his father. Defendant reported a good childhood with no abuse. Defendant has three children and saw them daily. He completed grade school, attended high school for two years and had "average" grades before "dropping out," tried unsuccessfully in 1999 to obtain his GED, and stated his intent to obtain his GED. He was never employed. Defendant reported good physical and mental health, denied drug and alcohol use, and denied gang membership.

¶ 4 At sentencing, the parties made no amendments to the PSI.

¶ 5 The State argued in aggravation that defendant admitted to Parson to cold-bloodedly killing his cousin in front of her infant daughter, and initially intending to kill the infant as well, merely to steal narcotics. The State argued that no mitigating factor applied and particularly that defendant did not act under provocation, and argued that defendant showed no remorse. The State noted that defendant admitted his crime to Parson on three occasions.

Arguing that defendant "would do this to his own cousin, what would he do to someone else," the State described defendant as a "menace" and asked for the maximum sentence.

¶ 6    Defense counsel argued that defendant had no criminal offenses or juvenile adjudications, had attended high school, had a good upbringing, and denied using drugs or alcohol. Counsel also noted that defendant was 15 years old at the time of the offense, and asked the court to take that into consideration in sentencing him.

¶ 7    The court noted that whatever sentence it imposed would not return Brown to her daughter. The court found that

> "in observing you on that tape, it was hard to believe that you were only 15 years old. It's a world that is completely unimaginable to me, a world that I don't understand. At 15, you should have been in school worrying about an ACT, an SAT, so you could go to college rather than ripping and running the streets. It is apparent in the video you were comfortable with Mr. Parson, a man your senior. You felt very comfortable keeping his company. *** [Y]our cousin, I never will forget the words that you said in that tape, you didn't know them like that. I interpreted that to mean that you weren't as close to that part of the family as you were to others. But no one regardless deserve[s] to die by the gun that you held in your hand. No one, regardless. Kena was a young lady. It was unfortunate that she was *** involved in an activity that she was involved in. *** Now today we have a child that's motherless. I think I can take that into consideration as far as aggravation is concerned. *** Over what? Nonsense. Disrespect for life. And that's what you did. You didn't appreciate life, you didn't appreciate Kena Brown's life, and you didn't appreciate yours because this is where you landed. It was cold-blooded. Like they say out on the street, just low down and dirty. You were 15. It's a hard way for you to live and grow up now. Hard."

The court sentenced defendant to 40 years' imprisonment. After informing him of his appeal rights, the court remarked that "[t]his is just a waste" because defendant was "a bright, intelligent young man" who "could have gone so much further that what you did on that afternoon."

¶ 8    On direct appeal, defendant contended in relevant part that the trial court improperly interjected the judge's personal views, and considered a factor inherent in the offense, in sentencing him. In affirming the conviction and sentence, we found no abuse of discretion in the court's 40-year sentence. Noting that the sentence was in the middle of the unextended sentencing range for first degree murder, we found that the court's sentencing remarks were not improper but demonstrated due consideration of the particular circumstances of this case.

¶ 9    In his first postconviction petition in 2006, as amended by counsel in 2010, defendant raised various claims. In relevant part, he claimed that (1) the first degree murder statute is unconstitutional because it has the same elements, but a higher sentence, than second degree murder and (2) he was not admonished about mandatory supervised release (MSR) at sentencing, and his sentence should be reduced by the MSR term. The court granted the State's motion to dismiss in 2013. On appeal from the dismissal, defendant raised no challenge to his sentencing.

¶ 10    In June 2015, defendant filed a *pro se* motion for leave to file a successive postconviction petition. Citing *Miller v. Alabama*, 567 U.S. 460 (2012), he claimed that his 40-year prison sentence for a crime committed when he was 15 years old is an unconstitutional *de facto* life sentence. Citing *People v. Davis*, 2014 IL 115595, defendant argued that he showed cause for a

successive petition because he could not have earlier raised a *Miller* claim and prejudice because *Miller* applies retroactively to his sentencing hearing. His attached proposed petition raised a *Miller* challenge to his sentence and claimed that the mandatory transfer statute, by which his case proceeded as a criminal case rather than a juvenile case, violates the federal and Illinois constitutions. It did not raise a claim that his sentence violates the Illinois Constitution.

¶ 11    The circuit court denied defendant leave to file a successive petition on July 17, 2015.

¶ 12    On appeal, defendant contends that he showed the requisite cause and prejudice for his successive petition, because he stated meritorious challenges to his 40-year prison sentence for a crime he committed when 15 years old.

¶ 13    Generally, a defendant may file only one postconviction petition without leave of court, which may be granted if the defendant shows an objective cause for not previously raising the instant claims and prejudice from not raising them. 725 ILCS 5/122-1(f) (West 2014). The cause-and-prejudice test is a higher standard for a defendant to overcome than the frivolous-and-patently-without-merit test for summarily dismissing a petition, and the circuit court should deny leave when it is clear upon reviewing the successive petition and attached documentation that the defendant's claims fail as a matter of law or the petition and documentation are insufficient to justify further proceedings. *People v. Terry*, 2016 IL App (1st) 140555, ¶ 28 (citing *People v. Smith*, 2014 IL 115946, ¶ 35). Our review of the denial of leave to file a successive petition is *de novo*. *Id.*

¶ 14    The eighth amendment of the United States Constitution prohibits "cruel and unusual punishments." U.S. Const., amend. VIII. It prohibits not only "inherently barbaric punishments" but those "disproportionate to the crime." *Graham v. Florida*, 560 U.S. 48, 59 (2010).

¶ 15    In *Miller*, the United States Supreme Court held that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.' " *Miller*, 567 U.S. at 465. The Supreme Court held that minors are constitutionally different from adults for sentencing purposes, being less mature and responsible, more impulsive, and more vulnerable to negative influences and peer pressure than adults, and not having the fully-formed character of adults so that their actions do not necessarily indicate irreversible depravity. *Id.* at 471-474. "We therefore hold that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." *Id.* at 479. While opining that "appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon," the Court stated that "we do not foreclose a sentencer's ability to make that judgment in homicide cases" but "a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles." *Id.* at 479, 480, 489.

¶ 16    In *Davis*, our supreme court held that *Miller* stated a new substantive rule of law applicable retroactively to cases on collateral review. *Davis*, 2014 IL 115595, ¶¶ 34-42. "In terms of the requisite cause and prejudice of the Post-Conviction Hearing Act, *Miller*'s new substantive rule constitutes 'cause' because it was not available earlier to counsel [citation], and constitutes prejudice because it retroactively applies to defendant's sentencing hearing." *Id.* ¶ 42. The *Davis* defendant, 14 years old at the time of the offense, received a mandatory sentence of natural life imprisonment, and the supreme court remanded for resentencing. *Id.* ¶¶ 4-5, 43.

¶ 17        In *People v. Patterson*, 2014 IL 115102, ¶ 107, a defendant contending that the mandatory transfer statute was unconstitutional argued that "the combination of the transfer statute and the applicable sentencing provisions is unconstitutional as applied to non-homicide offenders." In rejecting that contention, the supreme court stated that "both this court and the United States Supreme Court have closely limited the application of the rationale expressed in *** *Miller*, invoking it only in the context of the most severe of all criminal penalties." *Id.* ¶ 110. The supreme court found that the defendant's discretionary total sentence of 36 years' imprisonment, or 30 years and 7 months with good-conduct credit, was "lengthy" but "not comparable to" natural life imprisonment and thus "does not fall into that category" of the most severe penalty. *Id.* ¶¶ 108, 110.

¶ 18        In *Montgomery v. Louisiana*, 577 U.S. ___, 136 S. Ct. 718 (2016), the Supreme Court explained that, under *Miller*, life imprisonment without parole is unconstitutional for "juvenile offenders whose crimes reflect the transient immaturity of youth"; that is, "for all but the rarest of juvenile offenders, those whose crimes reflect permanent incorrigibility." *Id.* at ___, 136 S. Ct. at 734.

¶ 19        In *People v. Reyes*, 2016 IL 119271, a defendant who committed first degree murder and two counts of attempted first degree murder when he was 16 years old received prison sentences totaling 97 years when mandatory firearm enhancements were added to the minimum sentence for each offense and mandatory consecutive sentencing applied. *Id.* ¶¶ 1-2. Noting that the *Miller* "Court's holding required that life-without-parole sentences be based on judicial discretion rather than statutory mandates" (*id.* ¶ 4), our supreme court extended *Miller* to include *de facto* as well as *de jure* life sentences.

>      "A mandatory term-of-years sentence that cannot be served in one lifetime has the same practical effect on a juvenile defendant's life as would an actual mandatory sentence of life without parole—in either situation, the juvenile will die in prison. *Miller* makes clear that a juvenile may not be sentenced to a mandatory, unsurvivable prison term without first considering in mitigation his youth, immaturity, and potential for rehabilitation." *Id.* ¶ 9.

¶ 20        In *People v. Holman*, 2017 IL 120655, a defendant who committed first degree murder when he was 17 years old received a sentence of natural life imprisonment in a discretionary sentencing hearing. *Id.* ¶¶ 1, 6, 17. Our supreme court held "that *Miller* applies to discretionary sentences of life without parole for juvenile defendants." *Id.* ¶ 40. Noting that Illinois courts have always held that age is a complex sentencing factor, the *Holman* court held that applying *Miller* and *Montgomery* provides that

>      "a juvenile defendant may be sentenced to life imprisonment without parole, but only if the trial court determines that the defendant's conduct showed irretrievable depravity, permanent incorrigibility, or irreparable corruption beyond the possibility of rehabilitation. The court may make that decision only after considering the defendant's youth and its attendant characteristics. Those characteristics include, but are not limited to, the following factors: (1) the juvenile defendant's chronological age at the time of the offense and any evidence of his particular immaturity, impetuosity, and failure to appreciate risks and consequences; (2) the juvenile defendant's family and home environment; (3) the juvenile defendant's degree of participation in the homicide and any evidence of familial or peer pressures that may have affected him; (4) the juvenile defendant's incompetence, including his inability to deal with police officers or

prosecutors and his incapacity to assist his own attorneys; and (5) the juvenile defendant's prospects for rehabilitation." *Id.* ¶ 46.

Such an examination is inherently retrospective, examining "evidence of the defendant's youth and its attendant characteristics at the time of sentencing" with the proviso that "[w]hether such evidence exists depends upon the state of the record in each case." *Id.* ¶ 47. "A court revisiting a discretionary sentence of life without parole must look at the cold record to determine if the trial court considered such evidence at the defendant's original sentencing hearing. We must decide whether the trial court did so here." *Id.* The *Holman* court then conducted such a review of the record in its case and concluded that the trial court had not run afoul of *Miller*. *Id.* ¶¶ 48-50.

¶ 21    Here, where defendant was convicted and sentenced in 2004, we find that he could not raise a claim under the 2012 *Miller* case until our supreme court held in *Davis* that *Miller* applies retroactively to cases on collateral review. By that time, defendant's first postconviction petition as amended had already been dismissed. More importantly, *Davis* preceded defendant's 2015 motion to file a successive petition, and he cited *Davis* in the motion. However, for defendant to show cause and prejudice under *Davis*, he must have a meritorious claim under *Miller*, *Montgomery*, and their progeny. It is undisputed that defendant was a minor when he committed this offense. Whether his sentence is a *de facto* life sentence is in considerable dispute.

¶ 22    This case does not concern a sentence of natural life imprisonment as in *Miller*, *Montgomery*, *Davis*, or *Holman*, and the 40-year sentence here is not an obvious *de facto* life sentence like the 97 years in *Reyes*. Moreover, the 40-year sentence here was not the product of mandatory sentencing minimums or enhancements; indeed, the trial court sentenced defendant firmly in the middle of the applicable unextended and unenhanced range. While our supreme court has held that a discretionary natural life sentence (*Holman*) and a mandatory *de facto* life sentence (*Reyes*) raise issues under *Miller* and its progeny, it has not held that a discretionary sentence of a term of years in prison was constitutionally problematic as a *de facto* life sentence. It does not inherently follow from decisions scrutinizing a discretionary imposition of the absolute maximum sentence for minors (*Holman*) and a mandatory sentence indubitably equivalent to that maximum sentence (*Reyes*) that similar constitutional scrutiny applies to a lengthy but wholly discretionary sentence that is not clearly "unsurvivable." *Reyes*, 2016 IL 119271, ¶ 9.

¶ 23    That said, the question of whether a sentence is a *de facto* life sentence under *Miller* and its progeny has been repeatedly examined. Though *Patterson* was reviewing the automatic transfer statute rather than a sentence, it provides useful guidance insofar as our supreme court with *Miller* firmly in mind found that a 36-year total sentence was not equivalent to a life sentence. This court did not find a *de facto* life sentence in *People v. Perez*, 2018 IL App (1st) 153629, ¶¶ 37-38 (discretionary 53 years); *People v. Hoy*, 2017 IL App (1st) 142596, ¶ 46, pet. for leave to appeal pending, No. 122911 (filed May 9, 2018) (discretionary 52 years); *People v. Gipson*, 2015 IL App (1st) 122451, ¶¶ 65-67 (mandatory 52 years); *People v. Jackson*, 2016 IL App (1st) 143025, ¶¶ 54-58, pet. for leave to appeal pending, No. 121527 (filed Nov. 3, 2016) (discretionary 50 years); or *People v. Applewhite*, 2016 IL App (1st) 142330, ¶ 16, pet. for leave to appeal pending, No. 121901 (filed Feb. 10, 2017) (mandatory 45 years). In *People v. Evans*, 2017 IL App (1st) 143562, ¶¶ 14-18, pet. for leave to appeal pending, No. 122701 (filed Sept. 19, 2017), this court found that a discretionary 90-year total sentence, or 45 years with

day-for-day good-conduct credit, was not a *de facto* life sentence. Conversely, this court found *de facto* life sentences in *People v. Morris*, 2017 IL App (1st) 141117, ¶ 30 (discretionary 100 years); *People v. Nieto*, 2016 IL App (1st) 121604, ¶ 42-43, pet. for leave to appeal pending, No. 120826 (filed July 8, 2016) (discretionary 78 years); *People v. Smolley*, 2018 IL App (3d) 150577, ¶¶ 21-22 (discretionary 65 years); and *People v. Ortiz*, 2016 IL App (1st) 133294, ¶ 24, pet. for leave to appeal pending, No. 121578 (filed Dec. 30, 2016) (discretionary 60 years). In *People v. Buffer*, 2017 IL App (1st) 142931, ¶¶ 62-63, pet. for leave to appeal granted, No. 122327 (Ill. Nov. 22, 2017), this court found a discretionary 50-year sentence to be a *de facto* life sentence, citing studies of reduced life expectancy in prisoners. *Id.* ¶¶ 59-60. In *People v. Sanders*, 2016 IL App (1st) 121732-B, ¶¶ 25-27, pet. for leave to appeal pending, No. 121275 (filed Oct. 12, 2016), this court similarly found a discretionary sentence totaling 100 years, or "at least 49 years" with good-conduct credit, to be a *de facto* life sentence due to the defendant's reduced life expectancy as a prisoner. But see *Evans*, 2017 IL App (1st) 143562, ¶ 15 ("Prison life is undoubtedly harsh. But Evans invites us into the weeds of actuarial tables, asking us to make a legal determination of his likely lifespan. We are in a poor position to make this prediction and decline to do so.").

¶ 24    We find that we need not determine whether defendant's sentence is a *de facto* life sentence because, assuming *arguendo* that it is, we find no error upon conducting a *Holman* analysis of his sentencing. As we have stated, "a key feature of the juvenile's sentencing hearing is that the defendant had the 'opportunity to present evidence to show that his criminal conduct was the product of immaturity and not incorrigibility.' " *People v. Croft*, 2018 IL App (1st) 150043, ¶ 23 (quoting *Holman*, 2017 IL 120655, ¶ 49). *Croft* noted that the *Holman* factors are "a nonexhaustive list" and that "nothing in *Miller* or *Holman* suggests that we are free to substitute our judgment for that of the sentencing court" because the issue is not the particular sentence the trial court imposed but whether defendant had the opportunity to present evidence regarding his youth and the court considered his youth and its attendant characteristics in reaching its sentencing decision. *Id.* ¶¶ 32-33. As in *Croft*, "we have examined the cold record of the circuit court's [sentencing] hearing ***, which includes the common law record and report of proceedings, and find that the circuit court considered evidence of the defendant's youth and its attendant characteristics at the time of sentencing and that the defendant had" the opportunity required by *Holman*. *Id.* ¶ 24. As in *Croft*, the trial court had before it the trial evidence, the PSI, and the sentencing arguments of the parties. *Id.*

¶ 25    Regarding the first *Holman* factor—defendant's age at the time of the offense and any evidence of his particular immaturity, impetuosity, and failure to appreciate risks and consequences—counsel argued defendant's age in mitigation, and the court noted that defendant was 15 years old at the time of the offense. There was no evidence that defendant was particularly immature or impetuous. As to the second *Holman* factor—defendant's family and home environment—while he rarely saw his father, he was raised by his mother and grandmother, had a close relationship with them, and reported a good childhood with no abuse. Regarding the third *Holman* factor—defendant's degree of participation in the offense and any evidence of familial or peer pressures that may have affected him—the evidence was that defendant himself fatally shot Brown, his cousin, in robbing her of a few ounces of cocaine. While he did so with Brisco, who phoned Brown to arrange the purported delivery of cocaine, there was no evidence that defendant was pressured into the offense. Parson testified that Brisco passively smiled while defendant twice described the offense to Parson. While

defendant argues that his boasting to Parson is evidence of his susceptibility to peer pressure, the fact that he bragged *afterwards* is not evidence that his crimes were the *product* of pressure or influence rather than his own desire to steal cocaine from Brown. There was no evidence that defendant was unable to deal with police officers or prosecutors, nor incapable of assisting his own attorneys, which is the fourth *Holman* factor. As to the fifth *Holman* factor—defendant's rehabilitative prospects—the court had before it evidence and arguments in mitigation; commented on some of it, including defendant's age and intelligence; and concluded that defendant's offense was "cold-blooded" and "low down and dirty." Similarly the trial court in *Croft* also heard mitigating evidence and argument and considered them (*id.* ¶¶ 29, 32). While the *Croft* trial court did not expressly find the defendant incorrigible, it found him to be "really cold hearted, almost inhuman in his participation in his brutal, heinous, evil doing." (Internal quotation marks omitted.) *Id.* ¶ 31.

¶ 26    We reach the same conclusion as in *Croft*: "the *Holman* factors were sufficiently addressed" and "we cannot say that defendant's sentencing hearing was constitutionally defective." *Id.* ¶ 32. Because defendant's claim is not meritorious, he cannot show the requisite prejudice for his successive petition and the denial of leave to file it was not erroneous.

¶ 27    Defendant also contends that his sentence separately violates the proportionate penalties clause of the Illinois Constitution, providing that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. However, his successive petition did not raise such a claim, which, contrary to his reply-brief contention, cannot be raised at any time. *People v. Thompson*, 2015 IL 118151, ¶ 32 (facial constitutional challenges to statutes cannot be forfeited, but as-applied challenges are forfeited by not raising them in the circuit court); *Holman*, 2017 IL 120655, ¶ 32 ("*Davis* creates a very narrow exception to [the *Thompson*] rule for an as-applied *Miller* claim for which the record is sufficiently developed for appellate review."). Moreover, even if we were to read such a claim into his proposed successive petition, he lacks the requisite cause for not raising it earlier. Unlike his *Miller* claim that he could not have raised until *Davis*, as stated above, our supreme court ruled favorably on a minor's proportionate penalties claim in 2002. *Davis*, 2014 IL 115595, ¶ 45 (citing *People v. Miller*, 202 Ill. 2d 328 (2002)). Thus, defendant could have raised a proportionate penalties claim on direct appeal from his 2004 conviction or in his first postconviction petition.

¶ 28    Accordingly, the judgment of the circuit court is affirmed.

¶ 29    Affirmed.