2020 IL App (1st) 180058-U

FIFTH DIVISION
Order filed: June 19, 2020

No. 1-18-0058

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | Cook County. |
| v. | ) ) | No. 08 CR 3175 |
| JOSE BAHENA, | ) ) | Honorable Maura Slattery Boyle, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE HOFFMAN delivered the judgment of the court.
Justices Rochford and Delort concurred in the judgment.

**ORDER**

¶ 1     *Held*:  We affirm the order of the circuit court denying the defendant's motion for leave to file a successive postconviction petition because he failed to demonstrate that he suffered prejudice from the court's decision to sentence him to a 45-year prison term.

¶ 2     The defendant, Jose Bahena, appeals from an order of the circuit court of Cook County, denying his motion for leave to file a second successive postconviction petition pursuant to the Post–Conviction Hearing Act (Act) (725 ILCS 5/122 *et. seq.* (West 2012)). On appeal, he argues

that the circuit court erred in denying his motion for leave to file a successive postconviction petition because he met the requirements of the Act's cause-and-prejudice test. For the reasons that follow, we affirm.

¶ 3     The facts of this case are fully set forth in our order disposing of the defendant's direct appeal. See *People v. Bahena*, 2012 IL App (1st) 102054-U, ¶¶ 6-22. We set forth only those facts necessary for an understanding of this appeal.

¶ 4     The defendant, who was 19 years old at the time, was charged with multiple counts of first-degree murder in connection with a January 8, 2008 shooting that resulted in the death of Juan Lebron. Following a jury trial, the defendant was found guilty of first-degree murder and the circuit court sentenced him to 45 years' imprisonment, which included 20 years for the murder and 25 years for personally discharging a firearm.

¶ 5     The evidence at trial established that, on January 8, 2008, two groups of men from rival gangs were engaged in a verbal altercation inside of a liquor store. One group included the defendant and the other included Lebron and Jason Brock. According to the store clerk, Saleh Abdulla, he had deescalated the situation and the defendant's group was leaving the store when one of the people in the other group (later identified as Brock) "took his jacket off" and "start[ed] calling names." The defendant turned around, pulled out a gun, and fired. Abdulla did not see anyone else with a firearm. Abdulla's testimony is consistent with video surveillance footage.

¶ 6     Brock testified that he entered the liquor store with Lebron and another friend and went to the rear of the store, where they saw two other men. One of the two men asked Lebron what gang he was in. The "other individual grabbed a bottle off the shelf," and Brock responded by also grabbing a bottle. One of the two men asked Brock what gang he was in, and Brock

responded that he was a Simon City Royal. A store clerk temporarily de-escalated the situation, but one of the individuals ran out of the store and returned with three other men, including the defendant. According to Brock, he felt "trapped" and called a friend on his phone and requested a gun. Brock acknowledged that he yelled "FSK" at the other group, meaning "LaFamilia Stone Killer," to "disrespect" that gang. He recalled that Lebron was "trying to be the peacemaker" and told Brock "to back up, to leave him alone." As the defendant approached, Lebron "grabbed [Brock] and tried to place [Brock] behind him." Lebron pushed the defendant, and the defendant fired a total of five shots. On cross-examination, Brock acknowledged that defendant was the only person armed with a gun.

¶ 7    The defendant testified that he was a member of the LaFamilia Stone gang. On the night in question, he entered the liquor store after he was told that one of his friends was being threatened. The defendant acknowledged that he was carrying a firearm. Once inside, he heard someone in the back of the liquor store say "Stone killer" and heard Brock request a gun while talking on his phone. After Brock ended his phone call, the defendant saw him reach toward his waist. Lebron then pushed him backward and, believing that Brock was armed, the defendant opened fire. On cross-examination, the defendant conceded he was the only person in the store with a gun and that he fired five shots while standing near the front door.

¶ 8    The jury found the defendant guilty of first-degree murder and found that he personally discharged a firearm in the commission of the offense that proximately caused Lebron's death. At the defendant's sentencing hearing, the State relied on a victim impact statement and the facts of the offense in aggravation. In mitigation, the defense cited the defendant's age, lack of

criminal history, physically abusive father, and alcohol problems. The defendant gave a statement in allocution and apologized to Lebron's family and his own family.

¶ 9 The circuit court sentenced the defendant to 45 years' imprisonment, which include a 25-year enhancement for personally discharging a firearm. In announcing its decision, the court acknowledged that the defendant had "suffered physical abuse" and had substance abuse issues. The court characterized the offense as "senseless" and gang related. It told the defendant that, "[t]he fact of the matter is by the time that your sentence is done you will have spent double the amount behind bars versus what you spent out on the street." The defendant filed a motion to reconsider his sentence, which the court denied.

¶ 10 On direct appeal, we affirmed the defendant's conviction and sentence over his contention that the circuit court erred when it denied his motion to admit evidence of Brock's violent character. *People v. Bahena*, 2012 IL App (1st) 102054-U.

¶ 11 On January 1, 2013, the defendant filed a *pro se* postconviction petition pursuant to the Act, alleging ineffective assistance of both his trial and appellate counsel. On March 20, 2013, the circuit court summarily dismissed the petition. The Office of the State Appellate Defender filed a motion to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), which we granted on January 30, 2015. *People v. Bahena*, 2015 IL App (1st) 131791-U.

¶ 12 On February 19, 2016, the defendant filed his first successive postconviction petition under the Act, raising claims of actual innocence and a *Brady* violation. The defendant's claims were premised on an affidavit provided by Brock and attached to the defendant's petition, in which Brock averred that he and Lebron sought out a liquor store in rival gang territory hoping

to start a confrontation and that they purposefully provoked the defendant by implying they were armed.

¶ 13    On April 11, 2016, the circuit court denied the defendant's motion for leave to file his first successive postconviction petition, finding that the defendant did not raise a colorable claim of actual innocence because the evidence contained in the Brock affidavit was: not newly discovered, cumulative, and not of such a conclusive character that it would have changed the result on retrial. The court also found that the defendant's claim of a *Brady* violation failed because it was not based on "material" evidence and because he failed to demonstrate "cause" to assert the *Brady* claim in a successive petition. On appeal, we affirmed the circuit court's denial. *People v. Bahena*, 2020 IL App (1st) 161515-U.

¶ 14    On November 7, 2017, the defendant filed a motion for leave to file a second successive postconviction petition under the Act and attached a postconviction petition, arguing that his 45-year sentence is a *de facto* life sentence that violates the eighth amendment to the United States Constitution and the proportionate penalties clause of the Illinois Constitution because it was imposed without consideration of his age, potential for rehabilitation, or circumstances of the case, and shocks the moral sense of the community. He also argued that the 25-year firearm enhancement is unconstitutional as applied to him because he was acting in self-defense, and as such, the statute's deterrent effect is inapplicable.

¶ 15    In support of his claim that his 45-year sentence was unconstitutional, the defendant attached to his petition the following two newspaper articles: "Research Shows that Criminal Offending Ends During the Young Adult Stage of Life" from a February 2015 Juvenile Justice

Initiative publication and a October 2, 2015 *Washington Post* editorial entitled "Why 21 year-old offenders should be tried in family court."

¶ 16    On November 16, 2017, the circuit court denied the defendant's motion for leave to file a second successive postconviction petition, finding that the petition was "patently without merit" because it "erroneously indicates that *Miller* somehow applies to this situation, which it does not." This appeal followed.

¶ 17    On appeal, the defendant contends that the circuit court erred in denying him leave to a file second successive postconviction petition. Specifically, the defendant argues that his motion met the cause-and-prejudice test as to his claim that his 45-year sentence is unconstitutional under both the United States and Illinois constitutions.

¶ 18    Generally, a defendant may file only a single postconviction petition under the Act. 725 ILCS 5/122-1(f); *People v. Edwards*, 2012 IL 111711, ¶ 29. The bar against successive proceedings is relaxed in two situations: (1) where the defendant can establish cause and prejudice for failing to raise the claim in the original postconviction proceeding; or (2) where the defendant raises a colorable claim of actual innocence. *Edwards*, 2012 IL 111711, ¶¶ 22-23; 725 ILCS 5/122-1(f) (West 2016). Under the Act, "cause" is defined as an objective factor that impeded the defendant's ability to raise a specific claim during his prior postconviction proceedings; "prejudice" is occasioned by an error which so infected the trial that the resulting conviction or sentence violated due process. 725 ILCS 5/122-1(f) (West 2016). Our supreme court has held that "leave of court to file a successive postconviction petition should be denied when it is clear, from a review of the successive petition and the documentation submitted by the petitioner, that the claims alleged by the petitioner fail as a matter of law or where the successive

petition with supporting documentation is insufficient to justify further proceedings." *People v. Smith*, 2014 IL 115946, ¶ 35. We review the denial of a defendant's motion for leave to file a successive postconviction petition *de novo*. *People v. Miranda*, 2018 IL App (1st) 170218, ¶ 22.

¶ 19    The defendant contends that he made the requisite showings of cause and prejudice under the Act. As to cause, he argues that two of the primary authorities on which his claim relies, *People v. Reyes*, 2016 IL 119271, and *People v. Harris*, 2016 IL App (1st) 141744, were not decided until after he filed his prior postconviction petitions. As to prejudice, the defendant argues that his 45-year sentence is a *de facto* life sentence and is unconstitutional when applied to him, a 19-year-old whose "brain was still developing and had not yet fully matured into adulthood."

¶ 20    The State responds that the defendant fails both elements of the test because he could have made a good faith argument with precedent available to him at the time of his prior postconviction petitions and because he cannot establish prejudice. We agree with the State that the defendant cannot establish prejudice from the circuit court's decision to sentence him to 45 years' imprisonment.

¶ 21    We first turn to the defendant's claim that his 45-year sentence is a violation of the eighth amendment to the United States Constitution (U.S. Const., amends. VIII, XIV). In *Miller v. Alabama*, 567 U.S. 460 (2012), the United States Supreme Court held that the eighth amendment "forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." *Miller*, 567 U.S. at 479. The Court emphasized that "[m]andatory life without parole for a juvenile precludes consideration" of numerous mitigating factors, including the juvenile's age and its "hallmark features," and the possibility of rehabilitation. *Miller*, 567

U.S. at 477-78. Additionally, the Court held that "a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles." *Id.* at 489. In *Montgomery v. Louisiana*, 577 U.S. ——, ——, 136 S. Ct. 718, 736 (2016), the Court clarified that *Miller* applies retroactively "to juvenile offenders whose convictions and sentences were final when *Miller* was decided," including cases on collateral review.

¶ 22    The Illinois Supreme Court has ruled that *Miller* applies to discretionary, as well as mandatory life sentences, (*People v. Holman*, 2017 IL 120655, ¶ 40), and also to *de facto* life sentences, or sentences "that cannot be served in one lifetime" and have "the same practical effect on a juvenile defendant's life as would an actual mandatory sentence of life without parole" (*People v. Reyes*, 2016 IL 119271, ¶¶ 9-10). Recently, our supreme court in *People v. Buffer*, 2019 IL 122327, concluded that a sentence exceeding 40 years was a *de facto* life sentence, requiring the sentencing court to consider "[the] defendant's youth and its attendant circumstances." *Buffer*, 2019 IL 122327, ¶¶ 41-42.

¶ 23    Here, the defendant was 19 years old when he shot Lebron. The Supreme Court in *Miller* explicitly held that the eighth amendment only prohibits "mandatory life without parole for those under the age of 18" at the time of their crimes. (Emphasis added.) *Miller*, 567 U.S. at 465. Our supreme court later observed that, when the United States Supreme Court held that 18 would be the age to differentiate between juvenile and adult offenders, it was not "based primarily on scientific research" and merely coincided with the point where society determines adulthood and childhood for many other purposes. *People v. Harris*, 2018 IL 121932, ¶ 60 (citing *Roper*, 543 U.S. at 574). The *Harris* court further noted that new research findings still did not alter that "traditional line." *Id.* The supreme court expressed agreement with those courts that had

repeatedly held that the age of 18 still marked the line between juveniles and adults for sentencing purposes. *Id.* ¶ 61. Although the defendant urges this court to change where that line is drawn, such a task is best left to the legislature. See *Buffer*, 2019 IL 122327, ¶¶ 34-35.

¶ 24   We turn next to the defendant's argument that his 45-year sentence violates the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. 1, § 11). Article I, section 11 of the Illinois Constitution provides, in relevant part, that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art I, § 11. A sentence violates the proportionate penalties clause if it is " 'cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community.' " *People v. Sharpe*, 216 Ill. 2d 481, 487 (2005) (quoting *People v. Moss*, 206 Ill. 2d 503, 522 (2003)). We may determine whether a sentence shocks the moral sense of the community by considering both objective evidence and "the community's changing standard of moral decency." *People v. Hernandez*, 382 Ill. App. 3d 726, 727 (2008).

¶ 25   The defendant contends that his sentence shocks the moral sense of the community because his 19-year-old brain was no different than that of a juvenile offender, and thus, he shared juvenile offenders' diminished culpability and enhanced rehabilitative potential. He also argues that his sentence denies him the opportunity of being rehabilitated into a useful citizen because he will not be released until age 64 "with no retirement plan or savings." Lastly, he argues that, pursuant to our supreme court's holding in *Harris*, his petition must advance for further proceedings. The State responds that the defendant has failed to allege sufficient facts to

support his claim that he should be treated similar to a juvenile offender. We agree with the State.

¶ 26 The 18-year-old defendant in *Harris*, on which the defendant primarily relies, argued on direct appeal that his 76-year sentence shocked the moral sense of the community given the facts of his case, his youth, and other mitigating circumstances. *Harris*, 2018 IL 121932, ¶ 36. The court, however, noted that there was no evidentiary hearing or factual development to support the defendant's claim in the trial court. *Id.* ¶ 46. The court thus held that the record was insufficiently developed to address his contention that *Miller* applied to his proportionate penalties claim. *Id.* ¶ 48. Nonetheless, the *Harris* court observed that the defendant could raise the claim in a postconviction petition. *Id.*

¶ 27 Here, the defendant argues that he should have the opportunity to develop the record to determine whether the protections of *Miller* can apply to a 19-year-old offender. Successive postconviction petitions, however, are "highly disfavored" (*Bailey*, 2017 IL 121450, ¶ 39) and meeting the cause-and-prejudice test is "more exacting standard" than the test for surviving the first stage of an initial postconviction petition (*Conick*, 232 Ill. 2d at 142). In addition, a defendant must submit enough documentation to allow a circuit court to determine whether the cause-and-prejudice test was met. *Smith*, 2014 IL 115946, ¶ 35 (quoting *Tidwell*, 236 Ill. 2d at 161). The *Harris* court did not specify the requirements to meet the cause-and-prejudice test.

¶ 28 In this case, the defendant's motion for leave to file a successive postconviction petition did not provided any evidence to indicate how his own immaturity or individual circumstances would provide a compelling reason to allow him to file a second successive postconviction petition. Rather, on appeal, the defendant asserts that his behavior "was likely influenced by his

peers" because the shooting was gang related and that he acted impulsively and rashly owing to the fact that he had previously been the victim of gang-related violence. He even implies that a previous brain injury might have played a factor. However, these factual allegations were missing from his motion for leave to file a successive postconviction petition; instead, his motion merely contained general assertions that immaturity and brain development commonly associated with juveniles can also extend into young adulthood. We also note that, elsewhere in his motion, the defendant undercuts his current argument that his actions were the result of a still developing brain by contending that his actions on the day in question demonstrated "restraint" and that "to this day [he] believes his actions were justified." Simply put, the defendant's general assertions, along with his recitation of various studies regarding the evolving science of juvenile maturity and development, are insufficient to survive the more exacting standard that would warrant the filing of a successive postconviction petition. *People v. Holman*, 2017 IL 120655, ¶¶ 30 (citing *People v. Thompson*, 2015 IL 118151). The circuit court, therefore, correctly denied the defendant's motion because he could not establish prejudice under the cause-and-prejudice test.

¶ 29    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 30    Affirmed.