# Illinois Official Reports

## Supreme Court

---

### *People v. Reyes*, 2016 IL 119271

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. ZACHARY A. REYES, Appellant. |
| Docket No. | 119271 |
| Filed | September 22, 2016 |
| Decision Under Review | Appeal from the Appellate Court for the Second District; heard in that court on appeal from the Circuit Court of Kendall County, the Hon. John A. Barsanti, Judge, presiding. |
| Judgment | Appellate court judgment reversed.<br>Circuit court judgment reversed.<br>Cause remanded. |
| Counsel on Appeal | Michael J. Pelletier, State Appellate Defender, Thomas A. Lilien, Deputy Defender, and Kathleen J. Hamill and Fletcher P. Hamill, Assistant Appellate Defenders, of the Office of the State Appellate Defender, of Elgin, for appellant.<br><br>Lisa Madigan, Attorney General, of Springfield (Carolyn E. Shapiro, Solicitor General, and Michael M. Glick and Gopi Kashyap, Assistant Attorneys General, of Chicago, of counsel), for the People. |

## OPINION

¶ 1     The defendant, Zachary A. Reyes, was charged by indictment in the circuit court of Kendall County with the first degree murder of Jason Ventura and the attempted murders of Eduardo Gaytan and Jorge Ruiz. The indictment alleged that on December 20, 2009, defendant personally discharged a firearm in the direction of a vehicle occupied by Ventura, Gaytan, and Ruiz and that defendant's actions caused the death of Ventura as well as serious injury to Gaytan. Defendant, who was 16 years old at the time of the shootings, was prosecuted as an adult (see 705 ILCS 405/5-130(1)(a)(i) (West 2008)). Following a jury trial, he was found guilty of the charged offenses.

¶ 2     At defendant's sentencing hearing, the trial court imposed the mandatory minimum sentence of 45 years' imprisonment for the first degree murder conviction. This sentence consisted of the minimum 20-year sentence for murder (see 730 ILCS 5/5-4.5-20(a) (West 2008) (providing a range of 20 to 60 years)), plus a minimum 25-year mandatory firearm enhancement (see 730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2008) (providing for an add-on of 25 years to natural life)). The court also sentenced defendant to 26 years' imprisonment for each of the two attempted murder convictions. The 26-year sentences consisted of the minimum 6-year sentence for attempted murder (see 730 ILCS 5/5-4.5-25(a) (West 2008) (providing range of 6 to 30 years)), plus a 20-year mandatory firearm enhancement (see 730 ILCS 5/5-8-1(a)(1)(d)(ii) (West 2008)). In addition, the trial court determined that, pursuant to section 5-8-4(d)(1) of the Unified Code of Corrections (730 ILCS 5/5-8-4(d)(1) (West 2008)), all of defendant's sentences were required to run consecutively to each other. As a result, defendant was sentenced to a mandatory minimum aggregate sentence of 97 years' imprisonment. Further, in light of the truth in sentencing statute (730 ILCS 5/3-6-3(b)(i)-(ii) (West 2008)), defendant was required to serve a minimum of 89 years of the 97-year sentence imposed before he would be eligible for release. Defendant appealed.

¶ 3     In the appellate court, defendant argued that his sentence was unconstitutional pursuant to *Miller v. Alabama*, 567 U.S. ___, 132 S. Ct. 2455 (2012). In *Miller*, the Supreme Court held that the eighth amendment to the United States Constitution "forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." *Id.* at ___, 132 S. Ct. at 2469. Citing its earlier decisions in *Roper v. Simmons*, 543 U.S. 551 (2005) (holding it unconstitutional to impose capital punishment for crimes committed while under the age of 18), and *Graham v. Florida*, 560 U.S. 48 (2010) (holding it unconstitutional to sentence juvenile offenders to life imprisonment without possibility of parole for nonhomicide offenses), the Court in *Miller* explained that "children are constitutionally different from adults for purposes of sentencing" (*id.* at ___, 132 S. Ct. at 2464) and that "in imposing a State's harshest penalties, a sentencer misses too much if he treats every child as an adult" (*id.* at ___, 132 S. Ct. at 2468). The Supreme Court emphasized that a mandatory sentencing scheme for juveniles prevents the trial court from considering numerous mitigating factors, such as the juvenile offender's age and attendant characteristics; the juvenile's family and home environment and the circumstances of the offense, including the extent of the juvenile's participation and the effect of any familial or peer pressure; the juvenile's possible inability to interact with police officers or prosecutors or incapacity to assist his or her own attorneys; and

"the possibility of rehabilitation even when the circumstances most suggest it." *Id.* at ___, 132 S. Ct. at 2468. The Court concluded:

> "[A] judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles. By requiring that all children convicted of homicide receive lifetime incarceration without possibility of parole, regardless of their age and age-related characteristics and the nature of their crimes, the mandatory sentencing schemes before us violate this principle of proportionality, and so the Eighth Amendment's ban on cruel and unusual punishment." *Id.* at ___, 132 S. Ct. at 2475.

¶ 4 The Court clarified that its holding was not a categorical prohibition of life-without-parole sentences for juvenile murderers. *Id.* at ___, 132 S. Ct. at 2469. Rather, the Court's holding required that life-without-parole sentences be based on judicial discretion rather than statutory mandates. *Id.*

¶ 5 In the appellate court, defendant acknowledged that he had not received an actual life sentence without possibility of parole. However, he contended that the various sentencing statutes to which he was subject had combined in such a way so as to eliminate all judicial discretion and impose on him a mandatory prison term that could not be served within one lifetime, *i.e.*, a *de facto* natural life sentence without possibility of parole. Defendant maintained that the principles of *Miller* were applicable to such a *de facto* life sentence and, therefore, his sentence was unconstitutional.

¶ 6 The appellate court rejected defendant's argument. 2015 IL App (2d) 120471. The appellate court declined to extend the eighth amendment rationale in *Miller* to the facts of this case, concluding that *Miller* applied only to actual sentences of life without the possibility of parole and not to aggregate consecutive sentences that amounted to a *de facto* life term. *Id.* ¶¶ 23-25. The appellate court therefore affirmed defendant's sentence. We granted defendant's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Jan. 1, 2015).

¶ 7 In this court, defendant again argues that he has received a *de facto* mandatory life sentence without the possibility of parole and that such a sentence is unconstitutional under *Miller*. Defendant therefore contends that his sentence should be vacated and the cause remanded for a new sentencing hearing.

¶ 8 The State, in response, has filed a brief in which it concedes that the *Miller* rationale applies to a mandatory term of years that "indisputably amount[s]" to life imprisonment without the possibility of parole for a single offense or for offenses committed in a single course of conduct. We agree.

¶ 9 A mandatory term-of-years sentence that cannot be served in one lifetime has the same practical effect on a juvenile defendant's life as would an actual mandatory sentence of life without parole—in either situation, the juvenile will die in prison. *Miller* makes clear that a juvenile may not be sentenced to a mandatory, unsurvivable prison term without first considering in mitigation his youth, immaturity, and potential for rehabilitation. As one court has stated:

> "the teachings of the *Roper*/*Graham*/*Miller* trilogy require sentencing courts to provide an individualized sentencing hearing to weigh the factors for determining a juvenile's 'diminished culpability and greater prospects for reform' when, as here, the aggregate sentences result in the functional equivalent of life without parole. To do otherwise

would be to ignore the reality that lengthy aggregate sentences have the effect of mandating that a juvenile 'die in prison even if a judge or jury would have thought that his youth and its attendant characteristics, along with the nature of his crime, made a lesser sentence (for example, life *with* the possibility of parole) more appropriate.' *Miller*, 567 U.S. at ___, 132 S. Ct. at 2460. Such a lengthy sentence ' "means denial of hope; it means that good behavior and character improvement are immaterial; it means that whatever the future might hold in store for the mind and spirit of [the juvenile convict], he will remain in prison for the rest of his days." ' *Graham*, 560 U.S. at 70, 130 S. Ct. at 2027 (quoting *Naovarath v. State*, 105 Nev. 525, 779 P.2d 944, 944 (1989)). That is exactly the result that *Miller* held was unconstitutional. *Miller*, 567 U.S. at ___, 132 S. Ct. at 2460." *Bear Cloud v. State*, 2014 WY 113, ¶ 33, 334 P.3d 132 (Wyo. 2014).

See also, *e.g.*, *Brown v. State*, 10 N.E.3d 1, 7-8 (Ind. 2014) (150-year sentence " 'forswears altogether the rehabilitative ideal' " as stated in *Miller*, 567 U.S. at ___, 132 S. Ct. at 2465 (internal quotation marks omitted)); *Fuller v. State*, 9 N.E.3d 653, 657-58 (Ind. 2014) (same); *State v. Null*, 836 N.W.2d 41 (Iowa 2013) (*Miller* applies to a sentence that amounts to the functional equivalent of life without parole); *Moore v. Biter*, 725 F.3d 1184, 1193-94 (9th Cir. 2013) (sentence of 254 years is unconstitutional); *People v. Caballero*, 282 P.3d 291, 295 (Cal. 2012). Accordingly, we hold that sentencing a juvenile offender to a mandatory term of years that is the functional equivalent of life without the possibility of parole constitutes cruel and unusual punishment in violation of the eighth amendment.

¶ 10  In this case, defendant committed offenses in a single course of conduct that subjected him to a legislatively mandated sentence of 97 years, with the earliest opportunity for release after 89 years. Because defendant was 16 years old at the time he committed the offenses, the sentencing scheme mandated that he remain in prison until at least the age of 105. The State concedes, and we agree, that defendant will most certainly not live long enough to ever become eligible for release. Unquestionably, then, under these circumstances, defendant's term-of-years sentence is a mandatory, *de facto* life-without-parole sentence. We therefore vacate defendant's sentence as unconstitutional pursuant to *Miller*.

¶ 11  Having vacated defendant's sentence, we must determine the proper remedy. Both the State and defendant note that, during the pendency of this appeal, our legislature enacted a new law, codified in section 5-4.5-105 of the Unified Code of Corrections (730 ILCS 5/5-4.5-105 (West Supp. 2015)), which provides a new sentencing scheme for individuals under 18 years of age at the time of the commission of an offense. In general, the new statute requires the sentencing judge to take into account several factors in mitigation in determining the appropriate sentence for those under 18. In addition, the statute provides that the imposition of firearm enhancements is a matter of discretion with the trial court:

"(b) Except as provided in subsection (c), the court may sentence the defendant to any disposition authorized for the class of the offense of which he or she was found guilty as described in Article 4.5 of this Code, and may, in its discretion, decline to impose any otherwise applicable sentencing enhancement based upon firearm possession, possession with personal discharge, or possession with personal discharge that proximately causes great bodily harm, permanent disability, permanent disfigurement, or death to another person.

(c) Notwithstanding any other provision of law, if the defendant is convicted of first degree murder and would otherwise be subject to sentencing under clause (iii), (iv), (v), or (vii) of subsection (c) of Section 5-8-1 of this Code based on the category of persons identified therein, the court shall impose a sentence of not less than 40 years of imprisonment. In addition, the court may, in its discretion, decline to impose the sentencing enhancements based upon the possession or use of a firearm during the commission of the offense included in subsection (d) of Section 5-8-1." 730 ILCS 5/5-4.5-105(b), (c) (West Supp. 2015).

¶ 12    Both the State and defendant agree that, pursuant to section 4 of the Statute on Statutes (5 ILCS 70/4 (West 2014)), defendant is entitled, on remand, to be resentenced under the sentencing scheme found in section 5-4.5-105. See *People v. Hollins*, 51 Ill. 2d 68, 71 (1972) (section 4 of the Statute on Statutes entitles a defendant "to be sentenced under either the law in effect at the time the offense was committed or that in effect at the time of sentencing"). In addition, both the State and defendant agree that by applying this new sentencing scheme, the circuit court will have the discretion *not* to apply the firearm sentencing enhancements and, without these enhancements, the mandatory minimum aggregate sentence to which defendant would be subject is 32 years, a term that is not a *de facto* life sentence. Because defendant would not be subject to a mandatory, life-without-parole sentence under section 5-4.5-105, we remand this matter to the trial court with directions that a new sentencing hearing be held in accordance with this statute.

¶ 13                                    CONCLUSION

¶ 14    The judgments of the circuit and appellate courts are reversed. The cause is remanded to the circuit court for resentencing in accordance with section 5-4.5-105 of the Unified Code of Corrections (730 ILCS 5/5-4.5-105 (West Supp. 2015)).

¶ 15    Appellate court judgment reversed.

¶ 16    Circuit court judgment reversed.

¶ 17    Cause remanded.