2020 IL App (1st) 180190-U

THIRD DIVISION
September 30, 2020

No. 1-18-0190

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 00 CR 22644 |
| | ) | |
| TRAVIS ASHBY, | ) | Honorable |
| | ) | Charles P. Burns, |
| Defendant-Appellant. | ) | Judge Presiding. |
| | ) | |

_____

PRESIDING JUSTICE HOWSE delivered the judgment of the court.
Justices McBride and Ellis concurred in the judgment.

ORDER

¶ 1    *Held*: The judgment of the circuit court of Cook County summarily dismissing defendant's postconviction petition is reversed; defendant's postconviction petition which alleged his *de facto* life sentence violated the eighth amendment of the United States Constitution and the proportional penalties clause of the Illinois Constitution was not based on an indisputably meritless legal theory or fanciful factual allegations.

¶ 2    Defendant appeals from the trial court's first stage summary dismissal of his *pro se* postconviction petition filed pursuant to section 5/122-1 of the Post-Conviction Hearing Act (725 ILCS 5/122-1 (West 2016)).  In his petition, defendant, who was 22 years old at the time of his offense, argued that his 48-year sentence for first-degree murder and personally discharging a firearm was a *de facto* life sentence which violated the eighth amendment of the United States

Constitution and the proportionate penalties clause of the Illinois Constitution. Defendant argues the trial court failed to consider defendant's youth and its attendant characteristics in arriving at his sentence. For the reasons set forth below, we reverse the trial court's judgment and remand for further proceedings under the Post-Conviction Hearing Act.

¶ 3                                    BACKGROUND

¶ 4      Defendant, Travis Ashby, appeals the trial court's judgment summarily dismissing his initial petition for postconviction relief. Defendant was found guilty by a jury of first-degree murder on an accountability theory and for personally discharging a firearm. Defendant was sentenced to 48 years' imprisonment, 28 years for murder and an additional 20 years for personally discharging a firearm. On March 30, 2007, defendant's conviction and sentence were affirmed on direct appeal in which defendant alleged errors unrelated to the instant appeal (*People v. Ashby*, No. 1-04-0087 (2007) (unpublished order under Illinois Supreme Court Rule 23)). Leave to appeal to the Illinois Supreme Court was denied on September 26, 2007.

¶ 5                        Defendant's Trial and Sentencing Hearing

¶ 6      The relevant evidence and details from defendant's trial and sentencing hearing are as follows. In the early morning of January 8, 2000, defendant, along with Antolito Jones and Melvin Jones murdered the victim, Jerry Green. Defendant, Antolito, and Melvin were members of the "Third Ward" faction of the Gangster Disciples. Though the victim was not a gang member, the State's theory of the case posited that the victim was killed as part of an internal dispute between the Third Ward and the "No Limits" faction of the Gangster Disciples. Defendant, who was born on April 14, 1977, was 22 years old at the time of the murder.

¶ 7      Defendant gave several different statements to police concerning the events that transpired on January 8, 2000, but ultimately admitted he supplied Antolito's gun which was

used in the shooting murder of the victim, he was present at the scene, and was himself armed with a gun which he discharged during the offense. Defendant's videotaped statement was published to the jury.

¶ 8     In support of the defense's theory that defendant's statements to police were given because he had been isolated for over 36 hours and because of his suggestibility and cognitive limitations, Dr. Antoinette Kavanaugh, a clinical psychologist, was called as an expert witness. Dr. Kavanaugh opined that defendant was suggestible, had significantly below average intelligence, and was cognitively limited. She did not believe defendant was malingering. The State responded by providing expert testimony from Dr. Timothy Cummings, a forensic clinical services psychologist, who testified there was no evidence defendant was suggestible, and was, instead malingering.

¶ 9     At defendant's sentencing hearing, the trial court addressed mitigating and aggravating factors including defendant's "borderline intellectual functioning" as opined by Drs. Kavanaugh and Cummings; his criminal background consisting of three prior felony convictions for nonviolent offenses; his family ties; and his gang involvement. In sentencing defendant to 28 years for murder and an additional 20 years for personally discharging a firearm, the trial court found "the most important factor about [defendant's] involvement" in the murder was "that he supplied not just the murder weapon, but three guns; one for himself and one for each of the other two individuals, who, in fact, shot and killed the victim in this case." The court also found defendant was not "merely accountable" as argued by defense counsel but was "majorly accountable and involved" in the case. Aside from referring to defendant as a young man, the trial court did not mention defendant's age in its explanation of defendants 48-year sentence.

¶ 10    Defendant appealed both his conviction and sentence which, as noted above, were affirmed.

¶ 11                              Postconviction Petition

¶ 12    On October 25, 2017, defendant filed a *pro se* postconviction petition pursuant to section 5/122-1 of the Post-Conviction Hearing Act (725 ILCS 5/122-1 (West 2016)), arguing his 48-year sentence violated the eighth amendment of the United States Constitution and the proportionate penalties clause of the Illinois Constitution because it was a *de facto* life sentence and the trial court failed to consider defendant's youth and its attendant characteristics in arriving at his sentence.

¶ 13    On December 15, 2017, the trial court entered a judgment summarily dismissing defendant's postconviction petition finding defendant's claims were "frivolous and patently without merit."

¶ 14     Defendant timely appealed.  This appeal followed.

¶ 15                              ANALYSIS

¶ 16    On appeal, defendant argues the trial court erred in summarily dismissing his post-conviction petition.  Defendant acknowledges he was not a juvenile at the time of his offense but argues his 48-year sentence is a *de facto* life sentence and thus the protections afforded juveniles in sentencing under *Miller v. Alabama*, 567 U.S. 460 (2012), should be extended to him. Specifically, defendant argues the sentencing court was required to consider the transient qualities of youth and their enhanced amenability to rehabilitation under the eighth amendment and rehabilitation clause of Article I, Section 11 of the Illinois Constitution.  Defendant states on appeal that both his constitutional challenges are as-applied challenges.

¶ 17    We review *de novo* a first stage summary dismissal of a postconviction petition.  *People v. Patterson*, 2018 IL App (1st) 160610, ¶ 14.

¶ 18                                   Post-Conviction Hearing Act

¶ 19    The Post-Conviction Hearing Act (Act), 725 ILCS 5/122-1 *et seq.* (West 2016), provides a mechanism for collateral attack of a conviction or sentence allowing for inquiry into constitutional claims relating thereto which were not, and could not be, adjudicated during the trial or determined on appeal.  *People v. House*, 2019 IL App (1st) 110580-B, ¶ 25.

> "For cases not involving the death penalty, the Act sets forth a three-stage
> process for hearing a petitioner's constitutional claims.  [Citation.]  At the first
> stage, the circuit court independently reviews the petition and determines whether
> the petition is frivolous or patently without merit. [Citations.]  A petition may be
> summarily dismissed at the first stage as frivolous and patently without merit
> 'only if the petition has no arguable basis either in law or in fact.'  [Citation.]  A
> petition lacks an arguable basis in law or fact if it is based on 'an indisputably
> meritless legal theory or a fanciful factual allegation.'  [Citation.]  Because most
> petitions at the first stage are drafted by defendants with little legal knowledge or
> training, a defendant need only present a limited amount of detail in the petition to
> survive summary dismissal by the circuit court.  [Citation.]  That is, defendants
> only need to set forth the 'gist' of an arguably constitutional claim to meet the
> relatively low factual threshold to satisfy the first stage under the Act. [Citation.]"
> *Patterson*, 2018 IL App (1st) 160610, ¶ 15.

¶ 20    In first stage postconviction proceedings the defendant is not required to make "a substantial showing of a constitutional violation" nor is the defendant required to "demonstrate"

or "prove" the alleged constitutional violation to avoid dismissal. *People v. Tate*, 2012 IL 112214, ¶ 19. At the first stage of postconviction proceedings, all well-pleaded allegations in the petition are construed as true and the court may not engage in any factual determinations or credibility findings. *People v. Plummer*, 344 Ill. App. 3d 1016, 1020 (2003).

¶ 21        Eighth Amendment Constitutional Challenges Applicable to Juveniles

¶ 22    Having established defendant's burden at the first stage of postconviction proceedings, we turn to the history of caselaw which have paved the way for the constitutional challenges raised by defendant in his postconviction petition.

¶ 23    The eighth amendment prohibits "cruel and unusual punishments" and is applicable to the states through the fourteenth amendment. U.S. Const. amend. VIII; *People v. Davis*, 2014 IL 115595, ¶ 18.

> "The eighth amendment's ban on excessive sanctions flows from the basic principle that criminal punishment should be graduated and proportioned to both the offender and the offense. [Citations.] To determine whether a punishment is so disproportionate as to be 'cruel and unusual,' a court must look beyond history to 'the evolving standards of decency that mark the progress of a maturing society.' " *Id.*

¶ 24    Following a line of United States Supreme Court decisions applying the eighth amendment's ban on "cruel and unusual punishments" to juvenile sentences, the Court in *Miller v. Alabama*, 567 U.S. 460 (2012), held that the imposition of a mandatory sentence of life without the possibility of parole for a juvenile offender who commits murder without consideration of the defendant's youth and its attendant characteristics violates principles of proportionality and thus the eighth amendment's ban on cruel and unusual punishment. *Id.* at

479-80, 489.  It was subsequently decided that *Miller* applied retroactively to collateral review cases.  See *Montgomery v. Louisiana*, 136 S. Ct. 718, 736 (2016); see also *Davis*, 2014 IL 115595, ¶ 34.

¶ 25     Accordingly, *Miller* and *Montgomery* provide that before a juvenile offender may be sentenced to life imprisonment without parole, the trial court must consider the juvenile's "youth and its attendant characteristics" and find his or her conduct "showed irretrievable depravity, permanent incorrigibility, or irreparable corruption beyond the possibility of rehabilitation." *People v. Holman*, 2017 IL 120655, ¶ 46.  In conducting this analysis, the Court in *Miller* outlined a non-exclusive list of characteristics to be considered as follows:

> "(1) the juvenile defendant's chronological age at the time of the offense and any evidence of his particular immaturity, impetuosity, and failure to appreciate risks and consequences; (2) the juvenile defendant's family and home environment; (3) the juvenile defendant's degree of participation in the homicide and any evidence of familial or peer pressures that may have affected him; (4) the juvenile defendant's incompetence, including his inability to deal with police officers or prosecutors and his incapacity to assist his own attorneys; and (5) the juvenile defendant's prospects for rehabilitation." *Id*., citing *Miller*, 567 U.S. at 477-78.

¶ 26          *Miller* Protections Extended to *De Facto* Life Sentences for Young Adults

¶ 27     In *People v. Reyes*, 2016 IL 119271, our supreme court extended *Miller* protections holding "that sentencing a juvenile offender to a mandatory term of years that is the functional equivalent of life without the possibility of parole [, a *de facto* life sentence,] constitutes cruel and unusual punishment in violation of the eighth amendment." *Id*. at ¶ 9.  In *Holman*, our supreme court again extended *Miller* claims to include not just juvenile mandatory *de facto* life

sentences, but also juvenile discretionary *de facto* life sentences. *Holman*, 2017 IL 120655, ¶ 40. Thereafter, our supreme court in *People v. Buffer*, 2019 IL 122327, determined what constitutes a *de facto* life sentence and drew the line at 40 years concluding such "a prison term is long enough to be considered *de facto* life without parole" for juvenile offenders, absent evidence of incorrigibility. *Id*. at ¶ 40. The *Buffer* court explained that this "specific number does not originate in court decisions, legal literature, or statistical data." *Id*. Rather, the court stated, this number originates from the legislature who enacted a juvenile sentencing statute which imposes a 40-year minimum sentence for juveniles convicted of specified first-degree murders that would justify natural life imprisonment for adult offenders and thus "evidently believed that this 40-year floor for juvenile offenders who commit egregious crimes complies with the requirements of *Miller*." *Id*. at ¶¶ 39-40.

¶ 28     Relevant to our analysis here, we further note Justice Burke's special concurrence in *Buffer*. There, Justice Burke stated what constitutes a *de facto* life sentence can be determined from a "calculation—it is when the defendant's age at the earliest projected time of release exceeds an incarcerated minor's average life expectancy." *Id*. at ¶ 65 (Burke, J., specially concurring). Justice Burke further concluded the maximum sentence that should be imposed on juveniles is one that allows release at age 55 based on statistics for the average life expectancy of incarcerated individuals. See *id.* at ¶¶ 65-67.

¶ 29                    *Miller* Protections Sought by Young Adults

¶ 30     Our Supreme Court in *People v. Thompson*, 2015 IL 118151, and *People v. Harris*, 2018 IL 121932, has determined that a young adult offender bringing an "as applied" challenge seeking *Miller* protections requires an evidentiary hearing. In *Thompson*, our supreme court was asked to determine whether the "defendant's as-applied [eighth amendment] constitutional

challenge to his sentence is procedurally barred or forfeited because the defendant failed to include [the as-applied challenge to his mandatory natural life sentence under *Miller*] in his 2-1401 [(735 ILCS 5/2-1401 (West 2010))] petition." *Thompson*, 2015 IL 118151, ¶ 25. In the appeal of his 2-1401 petition, the defendant, who was 19 at the time of his offense, requested for the first time, the rationale of *Miller* be extended beyond minors under the age of 18. *Id*. at ¶ 17. The appellate court affirmed the trial court's dismissal of the defendant's petition declining to address the substance of his *Miller* claim finding the as-applied challenge procedurally barred. *Id*. at ¶ 18. Our supreme court affirmed the appellate court's decision on the basis that the defendant's as-applied constitutional challenge to his sentence was forfeited as it "is not a claim recognized by any of our precedents as exempt from the typical procedural bars of section 2-1401." *Id*. at ¶ 35. While concluding the "defendant cannot raise his as-applied constitutional challenge to his sentence under *Miller* for the first time on appeal from dismissal of his section 2-1401 petition" the court stated, without expressing opinion on the merits of any future claim, the defendant "is not necessarily foreclosed from renewing his as-applied challenged in the circuit court" in a subsequent proceeding under "the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2012) *** expressly designed to resolve constitutional issues, including those raised in a successive petition." *Id*. at ¶ 44.

¶ 31    In *Harris*, our supreme court further opened the door for the extension of *Miller* protections to young adults under both the eighth amendment to the United States Constitution, (U.S. Const., amend. VIII) and article I, section 11 of the Illinois Constitution (Ill. Const. 1970, art. I, § 11) "commonly referred to as the proportionate penalties clause." *Harris*, 2018 IL 121932, ¶¶ 34-61. The defendant in *Harris* was convicted of first-degree murder, attempt first-degree murder, and aggravated battery with a firearm and was sentenced to a mandatory

minimum aggregate term of 76 years' imprisonment. *Id*. at ¶ 1. The defendant was 18 years, 3 months of age at the time of his offenses. *Id*. The defendant appealed his sentence raising an as-applied challenge under the proportionate penalties clause and a facial eighth amendment challenge. *Id*. at ¶¶ 37, 53. In analyzing both constitutional claims the court noted the "critical" distinction between facial and as-applied challenges stating:

> "A party raising a facial challenge must establish that the statute is unconstitutional under any possible facts, while an as-applied challenge requires a showing that the statute is unconstitutional as it applies to the specific facts and circumstances of the challenging party. [Citations.]
>
> All as-applied constitutional challenges are, by definition, dependent on the specific facts and circumstances of the person raising the challenge. Therefore, it is paramount that the record be sufficiently developed in terms of those facts and circumstances for purposes of appellate review. [Citations.] We have reiterated that:
>
>> A court is not capable of making an as-applied determination of unconstitutionality when there has been no evidentiary hearing and no findings of fact. [Citation.] Without an evidentiary record, any finding that a statute is unconstitutional as-applied is premature. [Citations.]"
>
> (Internal quotations marks omitted.) *Id*. at ¶¶ 38-39, 52-53.

¶ 32    With respect to the defendant's as-applied challenge under the proportionate penalties clause, the *Harris* court explained that because the defendant's as-applied claim was not raised in the trial court and he was a young adult such that *"Miller* does not apply directly to his circumstances[,]", the record needed to "be developed sufficiently to address defendant's claim

that *Miller* applied to his particular circumstances." *Id*. at ¶¶ 45-48. The court declined to remand the matter for an evidentiary hearing and, as in *Thompson*, stated the defendant's claim could more appropriately be brought in another proceeding under the Post-Conviction Hearing Act which specifically allows for raising constitutional questions dependent on facts not found in the record. *Id*. at ¶ 48.

¶ 33 The court concluded the defendant's eighth amendment facial challenge contending that the protections for juveniles recognized in *Miller* should be extended to all young adults under the age of 21 also failed. *Id*. at ¶¶ 53-61. Here, the court stated:

> "[F]or sentencing purposes, the age of 18 marks the present line between
> juveniles and adults. As an 18-year-old, defendant falls on the adult side of that
> line. Accordingly, defendant's facial challenge to his aggregate sentence under
> the eighth amendment necessarily fails." *Id*. at ¶ 61.

¶ 34 While unequivocally closing the door on eighth amendment *facial* challenges based on *Miller* to young adults, we do not read *Harris* to foreclose an *as-applied Miller* challenge by a young adult offender. On this point, we note the *Harris* court distinguished the defendant's eighth amendment facial challenge from an as-applied eighth amendment challenge stating:

> "As noted previously, facial and as-applied constitutional challenges are
> not interchangeable. An as-applied challenge requires a showing that the statute
> is unconstitutional as it applies to the challenging party's specific circumstances.
> [Citation.] In contrast, a facial challenge requires the challenging party to
> establish that the statute is unconstitutional under any possible set of facts.
> [Citation.]

Defendant's claim is a facial challenge. He does not rely on his particular circumstances in challenging his sentence under the eighth amendment, but rather contends that the eighth amendment protection for juveniles recognized in *Miller* should be extended to all young adults under the age of 21. *** To the extent that defendant may have intended to raise an as-applied challenge under the eighth amendment, that claim would fail for the same reason his challenge under the Illinois Constitution failed, because no evidentiary hearing was held and no findings of fact were entered on how *Miller* applies to him as a young adult." *Id.* at ¶¶ 52-53.

¶ 35 We read our supreme court's precedents to set out the following procedure for young adults raising a claim that *Miller* protections apply to them:

"(i) under *Harris*, a young adult defendant must plead, and ultimately prove, that his or her individual characteristics require the application of *Miller*;

(ii) if, and only if, the young adult makes this showing, then the trial court goes on to consider whether the initial sentencing hearing complied with *Miller*, ***; and

(iii) if the initial sentencing hearing was *Miller*-compliant, then the trial court can reject the defendant's claim ***; or if the initial sentencing hearing was not *Miller*-compliant, then the trial court should order resentencing." *People v Ruiz*, 2019 IL App (1st) 163145, ¶ 52.

¶ 36 Defendant's As-Applied Constitutional Challenges

¶ 37    As instructed by *Harris* and *Thompson*, defendant has raised his as-applied constitutional challenges under the eighth amendment and proportionate penalties clause in a postconviction proceeding under the Act.  Defendant's postconviction petition contains detailed, well-cited legal argument, and research articles discussing the differences between juveniles and adults.  The petition cites articles noting brain development remains incomplete until the mid-20s.

¶ 38    Defendant here argues he has received a *de facto* life sentence stating "He will be 7[0] years of age at the completion of his sentence."  We note defendant's 48-year sentence is beyond the 40-year floor established in *Buffer* for juvenile *de facto* life sentences.  See *Buffer*, 2019 IL 122327, ¶¶ 40-41.  We also point to Justice Burke's special concurrence in *Buffer* explaining a *de facto* life sentence can be calculated by determining when "the defendant's age at the earliest projected time of release exceeds an incarcerated minor's average life expectancy" such that a maximum sentence imposed on juveniles would allow release at age 55 based on average life expectancy of incarcerated individuals statistics.  *Id*. at ¶¶ 65-67.  This suggested *de facto* life sentence calculation only gives further credence to defendant's challenge here where he would be incarcerated from age 22 through age 70.

¶ 39    Defendant's petition was summarily dismissed as being frivolous and patently without merit by the trial court in first stage proceedings.  Thus, on review, we are tasked with determining whether defendant's petition set forth a gist of an arguably constitutional claim not based on indisputably meritless legal theory or fanciful allegations.  See *Patterson*, 2018 IL App (1st) 160610, ¶ 15.  Here, we do not conclude the petition filed in this case is based on indisputably meritless legal theory or fanciful allegations.

¶ 40    The State argues this court "already rejected the precise claim [defendant] is making here in the case of *People v. Handy*, 2019 IL App (1st) 170213, and should now follow its prior

ruling." However, we find *Handy* distinguishable because *Handy* involved a successive postconviction petition filed by a young adult where the petitioner was required to meet the higher standard of the cause and prejudice test. See *id*. at ¶¶ 1-2. In this case, defendant filed an initial petition. In contrast to *Handy*, to avoid a summary dismissal defendant here was only required to state a gist of a constitutional violation. The petition was not subject to summary dismissal unless it was based upon a meritless legal theory or fanciful factual allegations.

¶ 41    We find both defendant's constitutional claims have an arguable basis in fact and law. In his petition defendant outlines the evolution of and continued application of *Miller* protections which he argues should be afforded to him under both the eighth amendment and proportionate penalties clause to find his sentence unconstitutional.

¶ 42    While we agree with the State that defendant's mental health was considered, it is not clear that all of the *Miller* factors were considered. In fact, at sentencing, aside from referring to him as a young adult, the trial court made no mention of defendant's age and little emphasis was placed on this element during argument by counsel. Had the trial court held a hearing to specifically address the *Miller* factors, defendant contends he may have received a lesser sentence.

¶ 43    Accordingly, we conclude defendant, at this first stage where he is not required to prove his case and his allegations are to be accepted as true, has made the gist of an arguably constitutional claim that his sentence violates the eighth amendment and proportionate penalties clause as applied to him. *See Patterson*, 2018 IL App (1st) 160610, ¶ 15. Therefore, we reverse the trial court's summary dismissal of defendant's postconviction petition and remand the cause back to the trial court for second stage proceedings to give defendant an opportunity to convince the trial court that *Miller* applies to him.

¶ 44    We emphasize that we express no opinion as to the actual merits of defendant's petition, only that it should be advanced to the second stage of postconviction review.

¶ 45                                CONCLUSION

¶ 46    For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and remanded for appointment of postconviction counsel and second-stage postconviction proceedings.

¶ 47    Reversed and remanded.