2022 IL App (1st) 182088-U
No. 1-18-2088
Order filed August 15, 2022

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) | |
| v. | ) ) | No. 08 CR 8671(03) |
| JASON RUMSEY, | ) ) ) | The Honorable Allen F. Murphy, Judge, presiding. |
| Defendant-Appellant. | ) ) | |

PRESIDING JUSTICE HYMAN delivered the judgment of the court.
Justices Pucinski and Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm the first-stage dismissal of Rumsey's postconviction petition finding he is not serving a *de facto* life sentence because his eligibility for good conduct credit provides him the opportunity for release before he has served 40 years in prison.

¶ 2    After a jury trial, the trial court sentenced Jason Rumsey to three concurrent 45-year sentences for attempted first-degree murder, armed robbery, and home invasion. We affirmed his convictions on direct appeal. *People v. Rumsey*, 2017 IL App (1st) 141245-U. Rumsey then filed a postconviction petition alleging his sentences violated the Illinois Constitution's proportionate penalties clause (Ill. Const. 1970 art. I, § 11). The trial court dismissed his petition at the first stage.

Rumsey now argues the court erred in dismissing his claim because he should have an opportunity to show that the constitutional principles in *Miller v. Alabama*, 567 U.S. 460 (2012), apply to him as a young adult.

¶ 3      While this appeal was pending, the Illinois Supreme Court decided *People v. Dorsey*, 2021 IL 123010, and held that we must consider statutorily authorized good conduct credit when determining whether a defendant's sentence is a *de facto* life sentence—the trigger for applying *Miller*. Doing so in Rumsey's case requires us to reject his claim because he will serve only 85% of his sentence if he receives all the credit to which he is entitled. That means he will spend 38 years in prison, below the 40-year floor for *de facto* life sentences our supreme court put in place in *People v. Buffer*, 2019 IL 122327. The robust protections of *Miller* and its progeny do not apply—even under the proportionate penalties clause. We must affirm.

¶ 4                                    Background

¶ 5      We extensively recounted the facts of Rumsey's offenses in disposing of his direct appeal. *Rumsey*, 2017 IL App (1st) 141245-U, ¶¶ 3-32. A jury found Rumsey guilty of attempted first-degree murder, armed robbery, home invasion, and aggravated battery with a firearm. The jury also found Rumsey personally discharged a firearm during the offenses, proximately causing great bodily injury. Because Rumsey's arguments are limited to the constitutionality of his sentence, we focus on those facts.

¶ 6      During sentencing, Rumsey's counsel highlighted his supportive family and minor criminal history. Specifically, Rumsey had served prison time for a controlled substance offense and had a few juvenile infractions. The State responded that Rumsey had been the mastermind of the offense and not shown remorse.

¶ 7     After hearing arguments, the trial court found Rumsey capable of rehabilitating himself. The court took notice that Rumsey was "a very young man" when he committed the offense—he was 18. In terms of aggravation, the trial court described Rumsey's insistence that one of the witnesses be cross-examined about her work as a dancer at a night club, and found that it was an attempt to "humiliate[ ]" her. The trial court sentenced Rumsey to concurrent 45-year sentences for attempted murder, armed robbery, and home invasion. The court merged Rumsey's convictions for aggravated battery with a firearm into the conviction for attempted first-degree murder.

¶ 8     On direct appeal, we affirmed Rumsey's convictions and sentences over his challenges to the sufficiency of the evidence and the admission of an out-of-court identification of a deceased witness and his claim the trial court failed to adequately inquire into his *pro se* claim of ineffective assistance of counsel. See *id.*

¶ 9     Rumsey filed a *pro se* postconviction petition, which made claims of constitutional violations. Only one is relevant here. Rumsey argued his 45-year sentence violated the proportionate penalties clause of the Illinois Constitution because the sentence amounted to a *de facto* life sentence, and the trial court failed to adequately consider his youth when he committed the offense. The trial court summarily dismissed the petition.

¶ 10                                    Analysis

¶ 11     Rumsey advances one claim from his postconviction petition on appeal: his concurrent 45-year sentences are unconstitutional under *Miller v. Alabama*, 567 U.S. 460 (2012), as applied to young adult offenders by operation of the proportionate penalties clause of the Illinois Constitution. He relies on *Buffer*, 2019 IL 122327, as setting a 40-year limit for juvenile sentences and argues his pleadings are sufficient at the first stage to show *Buffer*'s 40-year line should apply to him as a young adult. The State responds that Rumsey's petition is factually insufficient because

he did not allege similarities between juvenile offenders—to whom *Miller* presumptively applies—and his own development at age 18. The State also argues Rumsey's claim must fail as a matter of law for three reasons: (i) his 45-year sentences were discretionary, not mandatory; (ii) he was a principal actor in the offense, not just an accomplice or lookout; and (iii) he will receive sentence credit and not actually serve more than 40 years in prison so his sentence is not a *de facto* life sentence under *Buffer*.

¶ 12    On the State's last point, the Illinois Supreme Court decided *People v. Dorsey*, 2021 IL 123010, while this appeal remained pending. Our supreme court held that we must consider a defendant's opportunity to earn good conduct credit while incarcerated when determining whether a sentence constitutes a *de facto* life sentence. We ordered supplemental briefing asking the parties to address *Dorsey*'s effect on Rumsey's proportionate penalties clause claim if any. We thank the parties for their supplemental briefs.

¶ 13    Rumsey argues *Dorsey* has "no bearing" primarily because "the procedural posture is different." Namely, the defendant in *Dorsey* had to establish cause and prejudice in the context of a successive postconviction petition. In contrast, Rumsey is subject to the low bar of first-stage pleading requirements for an initial petition. Rumsey also distinguishes *Dorsey* because there the defendant relied on the eighth amendment; Rumsey, on the other hand, relies on the proportionate penalties clause, which prohibits sentences that "shock[ ] the moral sense of the community and undermine[ ] the objective of *** restor[ing] the offender to useful citizenship." The State responds that *Dorsey* is "dispositive," regardless of the different procedural posture. The State adds that Rumsey's focus on the proportionate penalties clause never explains why his sentence shocks the moral sense of the community.

¶ 14 We must agree with the State. *Dorsey* resolves the threshold question whether a defendant invokes the eighth amendment or the proportionate penalties clause, namely: Is the defendant's sentence a life or *de facto* life sentence when accounting for statutorily authorized good conduct credit? For Rumsey, that answer is no. Accordingly, the trial court did not have to issue a *Miller*-compliant sentence under the proportionate penalties clause. As for Rumsey's argument that his sentence "shocks the moral sense of the community," we conclude that it could have been made on direct appeal and so is waived for postconviction proceedings.

¶ 15 The Post-Conviction Hearing Act provides a system through which criminal defendants can raise constitutional claims about their trial or sentencing that were not and could not have been raised on direct appeal. *People v. Allen*, 2015 IL 113135, ¶ 20. Proceedings under the Act advance through three stages. *Id.* ¶ 21. In the first stage, the trial court evaluates whether the petition is frivolous or patently without merit. *Id.* If the petition passes this low bar, the trial court dockets it for further proceedings. *Id.* We take all allegations in the petition as true unless rebutted by the record and construe them liberally in a defendant's favor. *Id.* ¶ 25. A petition at this stage can be dismissed only if it "has no arguable basis either in law or in fact." *People v. Hodges*, 234 Ill. 2d 1, 11-12 (2009). We review *de novo* a first stage dismissal. *Id.* at 9.

¶ 16 In a series of cases, the United States Supreme Court found that the eighth amendment prohibits capital punishment and mandatory life sentences for juvenile offenders. *Buffer*, 2019 IL 122327, ¶ 16 (citing *Roper v. Simmons*, 543 U.S. 551, 578-79 (2005) (prohibiting capital punishment for juveniles); *Graham v. Florida*, 560 U.S. 48, 82 (2010) (prohibiting mandatory life sentences for juveniles convicted of nonhomicide offenses); *Miller*, 567 U.S. at 489 (prohibiting mandatory life sentences for juveniles convicted of murder)). The Illinois Supreme Court applied *Miller* to *de facto* life sentences (*People v. Reyes*, 2016 IL 119271, ¶ 10 (*per curiam*)) and

discretionary life sentences (*People v. Holman*, 2017 IL 120655, ¶ 40). Our supreme court also set the maximum sentence a juvenile can receive without being considered a *de facto* life sentence at 40 years. *Buffer*, 2019 IL 122327, ¶ 42.

¶ 17    The parties do not much dispute these fundamental constitutional principles and do not dispute that *Miller* protections can apply to young adults under the Illinois Constitution's proportionate penalties clause, at least in principle. See *People v. Harris*, 2018 IL 121932, ¶¶ 45-48 (leaving open possibility that *Miller* may apply to young adults under proportionate penalties clause where record shows how developing science on juvenile brain development applies to defendant's specific circumstances). We have allowed postconviction proceedings to go forward raising similar claims, even in more exacting procedural circumstances. *E.g., People v. Ruiz*, 2020 IL App (1st) 163140, ¶¶ 55-59.

¶ 18    Our supreme court's recent decision in *Dorsey*, however, erected a new roadblock for petitioners like Rumsey, who do not have to serve 100% of their arguably *de facto* life sentences. Instead, as we explained, *Dorsey* held that we are bound to consider the possibility that a defendant will receive all of the sentence credit to which they are entitled and, therefore, have the opportunity for release before they reach *Buffer*'s more-than-40-year baseline for *de facto* life sentences. *Dorsey*, 2021 IL 123010, ¶ 65.

¶ 19    Applying *Dorsey* to Rumsey's sentence, we are bound to conclude it is not a *de facto* life sentence. The trial court sentenced Rumsey to three 45-year sentences to run concurrently for attempted first degree murder, armed robbery, and home invasion. If Rumsey receives all the good conduct credit to which he is entitled, he will serve 85% of each of those sentences. See 730 ILCS 5/3-6-3(a)(2)(ii) (attempted murder); *id.* § 3-6-3(a)(2)(iii) (home invasion and armed robbery).

This means Rumsey's actual prison time will be just over 38 years, below *Buffer*'s baseline for a *de facto* life sentence.

¶ 20    In his supplemental brief, Rumsey resists this conclusion partly owing to the defendant in *Dorsey* having filed a successive postconviction petition, subjecting him to the more demanding cause-and-prejudice standard justifying further postconviction proceedings. *Dorsey*, 2021 IL 123010, ¶¶ 32-33 (explaining standard for successive postconviction petitions); *People v. Edwards*, 2012 IL 111711, ¶¶ 25-29 (explaining heightened standard for successive petitions compared to initial petitions). Rumsey does not explain, however, why the procedural difference between his petition and the petition in *Dorsey* makes a meaningful difference in terms of the threshold legal determination of the length of his sentence accounting for good conduct credit. We could imagine the procedural distinction being material if the parties had some factual dispute— for example, the record was unclear about the applicability of an enhancement or the particular statutory subsection under which he was sentenced. Then, under the low pleading bar for a first stage petition, Rumsey's claim may have been entitled to further proceedings to elucidate those facts. But the parties agree on the material facts, which show Rumsey is not currently serving a *de facto* life sentence under any standard of postconviction review.

¶ 21    Rumsey's supplemental brief then pivots and asks us to remand for further proceedings on a proportionate penalties clause claim unrelated to *Miller*—that his 45-year concurrent sentences violate the clause as they "shock[ ] the moral sense of the community and undermine[ ] the objective of *** restor[ing] the offender to useful citizenship." Yet, Rumsey does not point to information that would have been unknown to counsel or the trial court at his initial sentencing and direct appeal. Therefore, the non-*Miller* component of his proportionate penalties clause argument is waived for postconviction proceedings. See *Edwards*, 2012 IL 111711, ¶ 21 ("claims

that could have been presented to the reviewing court [on direct appeal] will be deemed waived"). To the extent Rumsey cites scientific literature explaining the brain development of young adults, we do not believe that information necessary to support a sentencing claim on direct appeal where the trial court already acknowledged Rumsey's youth as mitigating when imposing sentence.

¶ 22    Before *Dorsey*, we would have resolved this appeal in Rumsey's favor. Unfortunately, after *Dorsey*, we must resolve it against him. Because he is eligible for good conduct credit that allows for his release before he spends 40 years in prison, Rumsey is not serving a *de facto* life sentence and the trial court properly dismissed his petition.

¶ 23    Affirmed.