2022 IL App (2d) 131040-UC
No. 2-13-1040
Order filed August 23, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 01-CF-2403 |
| JOSEPH A. HAUSCHILD, | ) ) ) | Honorable James C. Hallock, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices Jorgensen and Brennan concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court properly dismissed defendant's postconviction petition.

¶ 2    We confront this same appeal for a third time. In 2013, defendant, Joseph A. Hauschild, appealed from the first-stage dismissal of his postconviction petition. His petition alleged that his 67-year sentence for multiple nonhomicide crimes, committed when he was 17, violated the rule set forth in *Miller v. Alabama*, 567 U.S. 460 (2012), and its progeny. In our two earlier decisions, we affirmed the dismissal. Our supreme court has directed us to vacate our most recent decision and reconsider this matter once again in light of new precedent. Having done so, we again affirm.

¶ 3                                    I. BACKGROUND

¶ 4     Around 10:00 a.m. on August 13, 2001, Tom and Wendy Wright discovered the body of their teenage son, Chris, outside their home in rural St. Charles. Chris had committed suicide. The Wrights' two young daughters went to stay with relatives, while Tom and Wendy spent the day grieving for their son and making funeral arrangements. At one point, one of Chris's acquaintances, Ethan Warden, called and asked to speak to Chris. Tom informed Warden that Chris had died.

¶ 5     Stricken with grief, Tom and Wendy went to bed around 10:00 p.m. that evening. At around 1:30 a.m., Tom and Wendy were awoken by two armed masked males who demanded that the couple hand over "money" and "a safe." Tom retrieved a lockbox from another room and handed it over. A struggle then ensued and the robbers began shooting; Tom was shot four times with a .357 magnum revolver and the robbers fled the bedroom. The family's dog, Nick, was also struck by one of the bullets. Wendy ran to Tom, picked up the phone, and called 9-1-1. As Wendy dialed, one of the robbers returned to the bedroom and fired a single shot at her. The bullet missed, and the robbers fled the house, this time for good. The assailants ran to a nearby car and drove away. Tom (and Nick) ultimately survived the encounter.

¶ 6     Nine days later, the police arrested two teenage boys: Hauschild, then 17 years old, and Ethan Warden, age 15. The boys had been Chris's acquaintances. Warden pled guilty to armed robbery and home invasion in exchange for a 12-year sentence and his testimony against Hauschild. According to Warden, the robbery was Hauschild's idea. Hauschild told Warden that there was a safe with $10,000 inside the Wright's home. On cross-examination Warden testified that he initially wanted to participate in the robbery because

          "Joe Hauschild made it seem real good, you know? We would get $10,000.

> He's going -- he was going to become a rapper. I -- you know, I could be a DJ. We
> were going to move to New York.
>
> He made it sound real glamorous, you know?"

¶ 7    Hauschild stole the guns and the car that were used in the robbery. After Tom was shot and the pair fled the bedroom, Hauschild ordered Warden to go back upstairs and "whack the bitch," meaning Wendy. Warden went upstairs and fired a single shot but missed. Later, when Hauschild and Warden opened the lockbox, all they found inside were some of the Wright family's identification records and less than $30 cash.

¶ 8    A jury found Hauschild guilty of, *inter alia*, attempted first degree murder (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2000)), home invasion (720 ILCS 5/12-11(a)(3) (West 2000)), and armed robbery (720 ILCS 5/18-2(a)(4) (West 2000)). In addition, the jury issued a special finding that subjected Hauschild to enhanced penalties for discharging a firearm during the commission of the crimes. 720 ILCS 5/12-11(c) (West 2000); 730 ILCS 5/5-8-1(d) (West 2000). The level of the offenses, as well as the serious bodily harm inflicted on Tom, compelled the court to issue mandatory consecutive sentences. 730 ILCS 5/5-8-4(a) (West 1990). This meant that Hauschild faced a minimum sentence of 53 years' imprisonment, and a maximum sentence of 125 years or a possible sentence of natural life.

¶ 9    After a thorough hearing, the trial court (Judge Donald C. Hudson) sentenced Hauschild to an aggregate 65-year term. Specifically, the court sentenced Hauschild to 35 years' imprisonment for home invasion, 18 years' imprisonment for attempted first degree murder, and 12 years' imprisonment for armed robbery. Additionally, because these were crimes of violence, Hauschild must serve at least 85% of his sentence. See 730 ILCS 5/3-6-3(a)(2) (West 2000). (Hauschild also

received a concurrent two-year sentence for criminal damage to property for wounding the Wright's dog, but we can ignore that sentence for the time being.)

¶ 10    Hauschild appealed. His convictions were affirmed (see *People v. Hauschild*, 364 Ill. App. 3d 202 (2006), *aff'd in part, rev'd in part by People v. Hauschild*, 226 Ill. 2d 63 (2007)), however, our supreme court determined that his sentence for attempted murder improperly lacked the applicable mandatory 20-year enhancement for using a firearm (720 ILCS 5/8-4(c)(1)(B) (West 2000)), which required resentencing on that count. On remand in 2008, the same judge resentenced Hauschild to 24 years' imprisonment for attempted murder, resulting in a combined 67-year term. Hauschild filed a direct appeal but later moved to voluntarily dismiss it, which we granted. *People v. Hauschild*, No. 2-08-0516 (2009) (minute order).

¶ 11    That brings us to the present appeal. In 2013, Hauschild filed a *pro se* postconviction petition alleging that his 67-year sentence, as well as his potential 53-year minimum term, violated the rule in *Miller v. Alabama*, 567 U.S. 460 (2012), the United States Constitution (U.S. Const. amend VIII) and the Illinois Constitution (Ill. Const. 1970, art. 1, § 11). Hauschild was 17 at the time of his crimes and, thus, a juvenile, and *Miller* held that special protections *may* apply to such offenders.

¶ 12    The trial court (Judge James C. Hallock) summarily dismissed Hauschild's petition at the first stage of proceedings. The trial court found that Hauschild's sentence was consistent with *Miller* and noted that the sentencing judge's comments indicated that he had carefully considered Hauschild's youth and rehabilitative potential at *both* of his sentencing hearings. Nevertheless, the sentencing judge found that, despite Hauschild's admirable progress in presentence custody programs, his rehabilitative prospects were fairly low, especially when considered alongside his cold meticulous planning of the attack on the Wrights. The trial court found that the sentencing

judge's inquiry comported with *Miller*.

¶ 13 Hauschild appealed and, as noted, we twice affirmed the dismissal of his petition (*People v. Hauschild*, 2015 IL App (2d) 131040-U; *People v. Hauschild*, 2018 IL App (2d) 131040-UB) and our supreme court has twice remanded it (*People v. Hauschild*, No. 120530 (Nov. 23, 2016) (petition for leave to appeal denied; supervisory order to vacate and reconsider); *People v. Hauschild*, No. 124438 (Nov. 24, 2021) (same)). After this most recent remand, we once again invited the parties to submit supplemental briefs. They have done so, and we now consider the matter at hand.

¶ 14                                    II. ANALYSIS

¶ 15 Before this court, Hauschild now argues that under *Graham v. Florida*, 560 U.S. 48 (2010), *Miller v. Alabama*, 567 U.S. 460 (2012), and *People v. Buffer*, 2019 IL 122327, his 67-year term is a *de facto* life sentence, and that the most he could constitutionally receive as a juvenile non-homicide offender was 40 years in prison. The State argues that Hauschild has misinterpreted those cases, and that the sentencing judge carefully considered his youth at sentencing, so his discretionary sentence was constitutional.

¶ 16 At the first stage of postconviction proceedings, the trial court independently reviews the petition in an administrative capacity and determines, within 90 days, if it is frivolous or patently without merit. *People v. Tate*, 2012 IL 112214, ¶ 9. A petition should survive the trial court's initial review if it has any arguable basis in law or in fact or, in other words, if it is not indisputably meritless. *Id*. We review summary dismissals *de novo*. *Id*.

¶ 17 Although Hauschild was resentenced in 2008, the *Miller* line of cases retroactively apply to his sentence. *Montgomery v. Louisiana*, 577 U.S. 190, 206-13 (2016); *People v. Davis*, 2014 IL 115595, ¶¶ 33-43. Thus, we are considering a constellation of caselaw that was unavailable to the

trial court when it dismissed Hauschild's petition in 2013. Despite that fact, we review the trial court's ultimate decision, and may affirm the dismissal of his petition on any basis called for by the record. *People v. Allen*, 2015 IL 113135, ¶ 19.

¶ 18    On the merits, we agree with the State that Hauschild has misinterpreted the relevant precedents, and that his discretionary sentence was constitutional under *Miller*.

¶ 19    As the State notes, the caselaw at issue largely applies to *mandatory* life sentences. We begin with *Graham v. Florida*, 560 U.S. 48 (2010), where the United States Supreme Court held unconstitutional a life-without-parole sentence imposed on a juvenile, under Florida law, for a single, nonhomicide offense (a violation of probation). *Id.* at 74. The Court noted that "[t]hose who commit truly horrifying crimes as juveniles may turn out to be irredeemable, and thus deserving of incarceration for the duration of their lives." *Id.* at 75. The Court further observed that "[t]he Eighth Amendment does not foreclose the possibility that persons convicted of nonhomicide crimes committed before adulthood will remain behind bars for life." *Id.* at 75. It does, however, prohibit the states from "making the judgment at the outset" through mandatory life sentencing for juveniles. *Id.*

¶ 20    Then, in *Miller*, 567 U.S. 460, the Court held "that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." *Id.* at 479. As in *Graham*, *Miller* did not forbid life sentences for juveniles altogether, however; discretionary life sentences for juveniles are still possible. But the Supreme Court said, in deciding on a sentence for a juvenile offender, "we require [the sentencing judge] to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* at 480.

¶ 21    As courts around the country adopted varying interpretations of *Miller*, our supreme court

held in *People v. Reyes*, 2016 IL 119271 (*per curiam*), that a juvenile offender's mandatory minimum 97-year sentence for first degree murder and attempted murder (with firearm enhancements) constituted a *de facto* life sentence in violation of *Miller*. *Reyes*, 2016 IL 119271, ¶ 10. Then, in *People v. Buffer*, 2019 IL 122327, the Illinois Supreme Court held that any sentence imposed on a juvenile offender that exceeded a 40-year term was a *de facto* life sentence, which would thus be treated as an actual life sentence under *Miller*. *Id.* ¶¶ 40-41. And, finally, in *People v. Dorsey*, 2021 IL 123010, the court modified its holding in *Buffer* to exclude good-conduct credit from the 40-year term in determining whether a juvenile received a *de facto* life sentence. *Id.* ¶¶ 48-54.

¶ 22    Strangely, the State now argues that Hauschild *did not* receive a *de facto* life sentence, which is plainly incorrect. His 67-year sentence—of which he must serve 85%, or around 57 years—is certainly greater than the 40-year time-to-be-served threshold set out in *Buffer* and *Dorsey*. At present, Hauschild is not eligible for parole until 2058, when he would be 74. So, whether one considers the issue just under *Buffer* and *Dorsey*, or even just in general, there is no merit to the State's position that Hauschild's 67-year sentence was somehow *not* a *de facto* life term.

¶ 23    Yet the State is correct that Hauschild's sentence was constitutional under *Graham*, *Miller*, and our supreme court's precedents. *Graham* explicitly did not "foreclose the possibility that persons convicted of nonhomicide crimes committed before adulthood will remain behind bars for life." 560 U.S. at 75. And in *Miller*, the Court reiterated that its decision "mandates only that a sentencer follow a certain process—considering an offender's youth and attendant characteristics—before imposing a particular penalty," such as life without the possibility of parole. 567 U.S. at 483.

¶ 24    Similarly, in *Reyes*, the court observed that *Miller* did not "categorical[ly] prohibit[ ]" life-without-parole sentences for juveniles. *Reyes*, 2016 IL 119271, ¶ 4. Rather, "*Miller* makes clear that a juvenile may not be sentenced to a *mandatory*, unsurvivable prison term *without first* considering in mitigation his youth, immaturity, and potential for rehabilitation." (Emphasis added.) *Reyes*, 2016 IL 119271, ¶ 9. That is consistent with *Buffer*, wherein the court repeated its earlier observation that " '*Miller* and *Montgomery* send an unequivocal message: Life sentences, whether mandatory or discretionary, for juvenile defendants are disproportionate and violate the eighth amendment, *unless* the trial court considers youth and its attendant characteristics.' " (Emphasis added.) *Buffer*, 2019 IL 122327, ¶ 25 (quoting *People v. Holman*, 2017 IL 120655, ¶ 40); accord. *People v. Jones*, 2021 IL 126432, ¶ 27 ("*Miller* claims require [a defendant] to show that the *de facto* life sentence he received was not entered as a result of the trial court's use of its discretion"); *People v. Lusby*, 2020 IL 124046, ¶ 52 (holding that juvenile's 130-year sentence passed "constitutional muster" because the trial court "considered the defendant's youth and its attendant characteristics before concluding that his future should be spent in prison").

¶ 25    These cases do not alter our conclusion that Hauschild's postconviction petition failed to state an arguable claim. Like *Graham* and *Miller* before it, the constitutional infirmity identified in *Reyes* and *Buffer* was the mandatory character of the defendant's sentence, which all but eliminated a meaningful sentencing hearing with consideration of the offender's age and individual characteristics. Here, defendant received a sentencing hearing.

¶ 26    There is one more point of distinction that Hauschild neglects to address. Although the defendant in *Graham* was sentenced on the underlying burglary after violating his probation, he was given a life sentence for a single nonhomicide offense. 560 U.S. at 57. Similarly, the defendant in *Buffer* was sentenced to 50 years imprisonment on a single count of first-degree murder. 2019

IL 122327, ¶ 5. Haushchild's case is assuredly different. He was convicted of *four* violent felonies: home invasion (to Wendy), the attempted murder of Tom, the armed robbery of both Wrights, and for shooting the Wright's dog. As courts have repeatedly held, it is an "unremarkable proposition that it is constitutionally permissible to punish a person who commits two, three, four or even more crimes *** more severely than a person who commits a single crime." (Internal quotation marks omitted.) *State v. Ali*, 895 N.W.2d 237, 243 (Minn. 2017) (collecting cases). Put differently, a defendant who "has subjected himself to a severe penalty" by committing multiple offenses has only himself to blame; "the unreasonableness is only in the number of offenses which [he] has committed." (Internal quotation marks omitted.) *O'Neil v. Vermont*, 144 U.S. 323, 331 (1892).

¶ 27    Here, even though Hauschild's sentence was greater than the 40-year threshold set out in *Buffer*, his sentence was constitutional. The record positively rebuts any claim that the sentencing judge gave inadequate consideration to Hauschild's status as a juvenile. Even excluding the parties' arguments, the transcripts from Hauschild's sentencing and re-sentencing hearings number in the *hundreds* of pages, and this was after a trial which numbered in the *thousands* of pages. More importantly, the sentencing judge's thorough and thoughtful comments at Hauschild's initial sentencing, at his re-sentencing, and on the denial of the motion to reconsider his second sentence, show that the court carefully evaluated each of the statutory and non-statutory factors in aggravation and mitigation. The sentencing judge repeatedly noted Hauschild's age, his difficult childhood, his apparent intelligence, his immaturity, and his extensive juvenile criminal history. Accordingly, the record clearly shows that the sentencing judge considered all that *Miller* requires.

¶ 28                            III. CONCLUSION

¶ 29    The state and federal constitutions "allow[ ] juvenile offenders to be sentenced to life without parole as long as the sentence is not mandatory and the sentencing court had discretion to

consider youth and attendant characteristics ***." *Dorsey*, 2021 IL 123010, ¶ 40 (citing *Jones v. Mississippi*, 141 S. Ct. 1307, 1314-15 (2021)). Hauschild was not subjected to a mandatory life sentence and the record shows that the sentencing court did consider his youth and its attendant characteristics. Nothing more was required. For these reasons, we affirm the judgment of the circuit court of Kane County.

¶ 30    Affirmed.